5 F.3d 181
 RICO Bus.Disp.Guide 8407
 CENTRAL DISTRIBUTORS OF BEER, INC., Plaintiff-Appellant,
v.
Donald CONN, an individual; Gloria Conn, an individual;
John Nate Beverage, Inc., a Michigan corporation;
and John Nate, Jr., an individual,
jointly and severally,
Defendants-Appellees.
 No. 92-1453.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 9, 1993.
Decided Sept. 23, 1993.
Rehearing and Stay Denied Jan. 25, 1994.
 
 Mark S. Demorest, Hainer & Demorest, Troy, MI (argued and briefed), for plaintiff-appellant.
 Michael H. Feiler, Ashley J. Israel (argued and briefed), Paul F. Joelson, Farmington Hills, MI, William E. Rheaume, Fredric J. Abood (argued and briefed), Abood, Abood & Rheaume, Lansing, MI, for defendants-appellees.
 Before: MARTIN and SUHRHEINRICH, Circuit Judges; and WELLFORD, Senior Circuit Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Central Distributors of Beer, Inc. filed this action against Donald Conn, Gloria Conn, John Nate Beverage, Inc., and John Nate, Jr. for violation of Central Distributors' exclusive beer distribution rights with Anheuser-Busch, Inc. The complaint alleged four state law claims and one claim under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. Sec. 1961 et seq. The district court granted summary judgment in favor of the defendants on the RICO claim, finding that Central Distributors had failed to prove that the defendants had committed any predicate act to support the RICO claim. The district court then dismissed Central Distributors' state law claims for lack of subject matter jurisdiction. We affirm.
 
 
 2
 Central Distributors is a wholesaler of Anheuser-Busch brands of beer. Pursuant to the Michigan Liquor Control Act and the Wholesaler Equity Agreement between Central Distributors and Anheuser-Busch, Central Distributors has an exclusive territory that includes much of Wayne County, Michigan and part of Oakland County, Michigan. Under the exclusive territory agreement, Central Distributors had the exclusive distribution rights for Anheuser-Busch products to retailers in its territory. John Nate Beverage, Inc., another wholesaler of Anheuser-Busch products, had an exclusive distribution agreement with Anheuser-Busch in another part of Michigan. The Michigan Liquor Control Act also prohibited a distributor with an exclusive distribution territory from selling beer to retailers located outside its exclusive territory, and the Act permits the sale of beer only to licensed retailers.
 
 
 3
 According to Central Distributors' complaint, Donald and Gloria Conn purchased large quantities of Anheuser-Busch products from Nate Beverage between 1983 and 1989. The Conns are not licensed retailers under the Michigan Liquor Control Act. The Conns allegedly transported the beer they purchased from Nate Beverage to their home, which was located in the Central Distributors exclusive distribution territory. The Conns then sold the beer to retailers and individuals in Central Distributors' exclusive territory. According to the complaint, Nate Beverage sold the beer to the Conns knowing that the Conns intended to sell and did sell the beer in Central Distributors' distribution territory. Central Distributors argues that the defendants engaged in this scheme to defraud Central Distributors by usurping sales that otherwise would have been made by Central Distributors or one of its retailers.
 
 
 4
 Central Distributors also alleged that Nate Beverage and the Conns engaged in an illegal scheme under the Michigan Bottle Bill to defraud Central Distributors. Under the Bottle Bill, a distributor must charge a deposit of ten cents for each bottle or can of beer that it sells to a retailer. The retailer then charges the deposit to the individual purchaser. When the purchaser returns the container, the retailer refunds the deposit and, in turn, seeks a refund from the distributor. According to Central Distributors, Nate Beverage sold empty beverage containers to the Conns for which Nate had already repaid the deposit to the retailer. The Conns then sold the empty containers to retailers within Central Distributors' territory, and the retailers returned the containers to Central Distributors for a refund of a deposit that the retailer never paid to Central Distributors.
 
 
 5
 Central Distributors filed this action against the Conns, Nate Beverage, and John Nate, Jr., alleging four state law claims and one claim under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. Sec. 1961 et seq. In its RICO claim, Central Distributors alleges that the defendants committed mail and wire fraud by engaging in this scheme to sell beer to retailers within Central Distributors' exclusive territory and to obtain false refunds of deposits from Central Distributors. The defendants filed a motion to dismiss the action for failure to state a claim upon which relief could be granted, Fed.R.Civ.P. 12(b)(6), but the district court denied this motion and afforded Central Distributors an opportunity to amend its complaint.
 
 
 6
 After Central Distributors filed an amended complaint, the defendants again filed a motion to dismiss or for summary judgment with the district court. The district court granted summary judgment in favor of the defendants on Central Distributors' RICO claim, finding that Central Distributors had failed to present evidence to support its claim that mail or wire fraud were the predicate acts to support its RICO claim. Specifically, the court found (1) undisputed evidence that the Conns were not aware of the existence of Central Distributors before the commencement of this action; (2) no evidence that John Nate, Jr. sold beer to the Conns through Nate Beverage with any intent to defraud Central Distributors; and (3) no evidence that the Conns purchased from Nate any of the beer he distributed in Central Distributors' territory. Because the RICO claim had provided the only basis for the district court's jurisdiction, the court dismissed Central Distributors' remaining state law claims. Central Distributors now appeals, and we affirm.
 
 
 7
 Under FED.R.CIV.P. 56(c), the district court may grant summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id. at 322-23, 106 S.Ct. at 2552. Our review of a district court's grant of summary judgment is de novo. Brooks v. American Broadcasting Cos., Inc., 932 F.2d 495, 500 (6th Cir.1991). Moreover, we view all evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).
 
 
 8
 A violation of 18 U.S.C. Sec. 1962(c), the provision of RICO upon which Central Distributors relies to support its claim, consists of the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. V. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). " 'Racketeering activity' is defined in 18 U.S.C. Sec. 1961(1)(B) as including any act 'indictable' under certain enumerated federal criminal statutes, including 18 U.S.C. Sec. 1341, which makes mail fraud a criminal offense, and 18 U.S.C. Sec. 1343, which makes wire fraud a crime." Schreiber Distributing Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1399 (9th Cir.1986). A civil RICO action does not require that there be a prior criminal conviction for the conduct forming the predicate act; however, the conduct used to support a civil RICO action must be indictable. Sedima, 473 U.S. at 481-82, 105 S.Ct. at 3277. See also 18 U.S.C. Sec. 1961(1). Thus, the plaintiff must prove each prong of the predicate offense, or "racketeering activity," to maintain a civil action under the RICO statute. SeeSedima, 473 U.S. at 488-92, 105 S.Ct. at 3280-83. "In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the [predicate act] constituting the violation." Id. at 496, 105 S.Ct. at 3285.
 
 
 9
 The predicate acts upon which Central Distributors relies to establish racketeering activity by the defendants are mail fraud and wire fraud. To maintain its RICO action, Central Distributors must show that each element of mail fraud or wire fraud has been committed by the defendants. "To allege a violation of the mail fraud statute, it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." Schreiber, 806 F.2d at 1399-1400. "Similarly, a wire fraud violations [sic] consists of (1) the formation of a scheme or artifice to defraud (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." Id. at 1400. Therefore, Central Distributors cannot maintain a civil RICO claim against these defendants absent evidence that the defendants made misrepresentations or omissions of material fact to Central Distributors and evidence that Central Distributors relied on those misrepresentations or omissions to its detriment. SeeBender v. Southland Corp., 749 F.2d 1205, 1216 (6th Cir.1984). See alsoBlount Financial Svcs., Inc. v. Walter E. Heller & Co., 819 F.2d 151, 152 (6th Cir.1987) (holding that the plaintiff must plead with particularity the false statements of fact made by the defendants to the plaintiffs and the facts showing that the plaintiff relied on those statements to its detriment); Schreiber, 806 F.2d at 1400 (noting that the plaintiff properly pleaded that the defendants had made misrepresentations to the plaintiff and that the plaintiff had detrimentally relied on those statements). Thus, the defendant must make a false statement or omission of fact to the plaintiff to support a claim of wire fraud or mail fraud as a predicate act for a RICO claim.
 
 
 10
 Assuming that Central Distributors has met the requirement that it plead the acts of mail and wire fraud with particularity, Blount Financial Svcs., 819 F.2d at 152, we believe the district court properly granted summary judgment in favor of the defendants on the RICO complaint. In our opinion, the fraud connected with mail or wire fraud must involve misrepresentations or omissions flowing from the defendant to the plaintiff. Although a general fraudulent scheme which incidentally affects a person may support other civil claims against the wrongdoer, the victim cannot assert a RICO claim absent evidence that the defendant made representations to the victim. Central Distributors has not produced a shred of evidence showing that any of the defendants made any false statements or omissions to Central Distributors or that Central Distributors relied on any statement or omission to its detriment. In fact, as the district court noted, evidence in the record demonstrates that the Conns were not even aware of the existence of Central Distributors until after the commencement of this action. Moreover, Central Distributors never had direct contact with any of the defendants during the time that the Conns were allegedly selling beer in Central Distributors' exclusive territory. In our mind, Central Distributors has failed to point to any testimony or evidence that John Nate, Jr. sold beer through Nate Beverage to the Conns with any intent to defraud Central Distributors. Although the defendants may have committed other wrongs by this scheme, nothing in the record supports Central Distributors' claim that the defendants violated RICO in any way.
 
 
 11
 Accordingly, the judgment of the district court is affirmed.
 
 
 12
 WELLFORD, Senior Circuit Judge, dissenting.
 
 I. SUMMARY JUDGMENT
 
 13
 This is a close and difficult case, in my view. It involves one of the most complex statutes ever enacted by Congress, the Racketeer Influenced and Corrupt Organizations Act. The plaintiff presented a detailed and definitive statement of its claim that the defendants knowingly defrauded it by participating in an ongoing scheme to its claimed detriment by invading its established territory and transacting business illegally because the defendant was an unlicensed and "bootleg" dealer. There seems to me to be several potential genuine issues of material fact presented after some considerable discovery with this case.
 
 
 14
 First is the issue of whether the defendant Conn knew that he was illegally dealing in the plaintiff's territory. See, for example, the deposition testimony of Mr. Busatti, and consider reasonable inferences to be drawn from the circumstances established by the plaintiff (including Conn's false story that he was buying beer from an uncle from western Michigan).
 
 
 15
 Nate's unusual relationship with Conn and suspicious deliveries to Conn within the plaintiff's territory raises the issues of Nate's knowledge of the illegal transactions. Consider Conn's loading a U-Haul at Nate's place of business and the loading of a white truck there similar to the one making deliveries to Conn. See Hunsbergen's deposition testimony.
 
 
 16
 We review the grant of summary judgment de novo and view all the evidence and reasonable inferences to be drawn therefrom in a "light most favorable to the non-moving party," as stated by the majority. I believe the district court should have considered whether claimed instances of mail or wire fraud at least indirectly were utilized "in furtherance of the scheme" engaged in by defendants, claimed to be ongoing and damaging to the plaintiff. I concede the questionable showing here that the defendants made false representations to the plaintiff and that the plaintiff relied on these misrepresentations to its detriment.
 
 
 17
 I believe remand is appropriate, however, so that the district court may hear argument on these close and difficult issues. The plaintiff expressly requested a hearing and this was rejected by the district judge. I am persuaded that the plaintiff has demonstrated sufficient likelihood of genuine contested issues of material fact that the district court improperly granted summary judgment.
 
 II. ORAL ARGUMENT
 
 18
 While the Sixth Circuit Federal Practice Manual is generally aimed at practice before the courts of appeals, I believe its discussion of "The Importance of Oral Argument" is relevant with respect to dispositive motions pending before district courts in this circuit. In that Manual, the authors note that
 
 
 19
 Oral argument is of great importance in the Sixth Circuit. Although different judges may give different weight to oral argument, all judges use oral argument to clarify issues and to inquire into the record.[7]
 
 
 20
 The importance of oral argument is emphasized by the fact that, in a majority of cases, the decision is ultimately reached in accordance with the impression that the judges have as they leave the bench. While it is quite true that the impression after oral argument derives from the reading of the briefs as well as from the argument, it is also true that the impression from reading the briefs may be changed or modified by the oral argument. Although the oral argument and brief complement each other, each serves a different purpose. The oral argument should be something in the nature of a tour de force designed to persuade the judges that fair play and precedent support the position of the advocate.
 
 
 21
 Sixth Circuit Federal Practice Manual at 112. An eminent academician stated the same thought well:
 
 
 22
 Oral expression, especially in response to intelligent questioning, can convey ideas better than cold print can. It can supplement and clarify arguments that are not adequately set forth in briefs; it can rivet attention upon matters that a reader may have passed over too lightly ... counsel heard in oral argument should be better satisfied that, by both written and oral presentations, he has had maximum opportunity to present his client's cause.
 
 
 23
 Robert A. Leflar, Internal Operating Procedures of Appellate Courts (American Bar Foundation 1976), at 32.
 
 
 24
 The Federal Rules provide for a hearing with respect to certain definitive motions, which, like the present motion, may be dispositive of the case. See Fed.R.Civ.P. 12:
 
 
 25
 FRCP 12(d) requires that a FRCP 12(b) motion for dismissal or a FRCP 12(c) motion for judgment on the pleadings be disposed of only after a hearing, which affords an opportunity to present legal arguments either orally, in writing, or both at the district court's discretion.
 
 
 26
 27 Federal Procedure Sec. 62.375 (Lawyers Ed.1984).
 
 
 27
 Concededly, Fed.R.Civ.P. 56 does not require an oral hearing, but Rule 56(c) seems to indicate that an actual "hearing" is (or should be) the usual course for dispositive summary judgment motions: "The motions shall be served at least 10 days before the time fixed for the hearing." Fed.R.Civ.P. 56(c).
 
 
 28
 In this particular case, I believe it was an abuse of discretion on the part of the district court not to conduct a hearing and permit oral argument in this difficult and involved case. "Where the district court must assess the relative credibility of witnesses, the case is particularly inappropriate for summary judgment and requires a full hearing on the merits." In re Atlas Concrete Pipe, Inc., 668 F.2d 905, 909 (6th Cir.1982) ("The district court should be reluctant to dispose of a complex case on summary judgment...." Id. at 908 n. 5). RICO is a difficult statute fraught with problems in its interpretation. A corporate defendant that engages in fraudulent activities of a type described as "racketeering," and which is "the direct or indirect beneficiary of the pattern of racketeering activity" may be liable to a damaged and defrauded plaintiff. Schreiber Distributing v. Serv-Well Furniture Co., 806 F.2d 1393, 1398 (9th Cir.1986). See alsoHaroco, Inc. v. American Nat'l Bank & Trust Co., 747 F.2d 384 (7th Cir.1984), aff'd on other grounds, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). Compare, however, Blount Financial Services, Inc. v. Walter E. Heller Co., 819 F.2d 151 (6th Cir.1987). I believe the district court should have heard argument on whether the defendants carried the "burden of clearly establishing the non-existence of any genuine issue of fact material to a judgment in his favor." United States v. Articles of Device, 527 F.2d 1008, 1011 (6th Cir.1976) (emphasis added).
 
 
 29
 I would REVERSE and REMAND this case, under the circumstances, for the district court to consider further the summary judgment issues and to fix a time promptly to hear oral argument thereon.
 
 
 
 [7]
 For an informative discussion of the views of various Sixth Circuit judges toward oral argument, see Rose, Oral Argument in the Sixth Circuit, 19 U.Tol.L.Rev. 229 (1988)