**IRON WORKERS LOCAL UNION
NO. 17 INSURANCE FUND,
et al., Plaintiffs,**

v.

**PHILIP MORRIS, INC.,
et al., Defendants.**

No. 1:97–CV–1422.

United States District Court,
N.D. Ohio,
Eastern Division.

May 11, 1999.

Eben O. McNair, Timothy Joseph Gallagher, Schwarzwald & Rock, Cleveland, OH, Jack Landskroner, Monica Zunt, Landskroner Law Firm, Cleveland, OH, John M. Broaddus, Robert J. Connerton, Connerton, Ray & Simon, Washington, DC, Michael C. Spencer, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, Patrick J. Coughlin, Frank J. Janecek, Jr., Scott H. Saham, Michael J. Dowd, Charles S. Crandall, Ex Kano S. Sams, II, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Paul J. Pennock, Jerry Kristal, Mitchell M. Breit, Karen J. Sabine, Weitz & Luxenberg, New York City, Lembhard G. Howell, Richard G. Piccioni, C. Cleveland Stockmeyer, Michael E. Withey, Paul L. Stritmatter, Philip G. Arnold, Kevin Coluccio, Keith L. Kessler, J. Murray Kleist, Stritmatter, Kessler, Whelan & Withey, Seattle, WA, George Kargianis, Kargianis, Watkins, Marler, Seattle, WA, Roger M. Adelman, Washington, DC, G. Robert Blakey, Notre Dame Law School, Einer R. Elhauge, Harvard Law School, Cambridge, MA, Jonathan D. Rowe, Soble & Rowe, Ann Arbor, MI, for plaintiffs.

Lawrence R. Desideri, Thomas J. Frederick, Dan K. Webb, Kevin J. Narko, Bradley E. Lerman, George C. Lombardi, Winston & Strawn, Chicago, IL, R. Noel Clinard, Hunton & Williams, Richmond, VA, Hugh E. McKay, Robert D. Anderle, Porter, Wright, Morris & Arthur, Cleveland, OH, Alan B. Howard, Winston & Strawn, New York City, Roger Allen Hipp, Jones, Day, Reavis & Pogue, Cleveland, OH, Matthew A. Kairis, Jeffrey J. Jones, Melanie S. Fahey, Jones, Day, Reavis & Pogue, Columbus, OH, Daniel F. Kolb, Vincent T. Chang, Davis, Polk & Wardwell, New York City, Peter J. Biersteker, Jones, Day, Reavis & Pogue, Washington, DC, John B. Williams, Collier, Shannon & Scott, Washington, DC, Phillip J. Campanella, Calfee, Halter & Griswold, Cleveland, OH, David M. Bernick, Michelle H. Browdy, Kirkland & Ellis, Chicago, IL, Kenneth N. Bass, Paul Taylor, James C. Munson, Dawn Danzeisen Marchant, Richard Rice, Kirkland & Ellis, Washington, DC, John Winship Read, Amanda Martinsek, Vorys, Sater, Seymour & Pease, Cleveland, OH, Gregory M. Loss, Bruce G. Sheffler, Donald I. Strauber, Chadbourne & Parke, New York City, Craig E. Gustafson, Gary R. Long, William J. Crampton, Bruce R. Tepekian, Gregory L. Fowler, Shook, Hardy & Bacon, Kansas City, MO, Patrick M. McLaughlin, John F. McCaffrey, Susan Dumay Wolfe, Roberta J. Sullivan, McLaughlin & McCaffrey, Cleveland, OH, Thomas P. Meaney, Jr., Kenneth J. Walsh, Tyler Lee Mathews, McDonald, Hopkins, Burke & Haber, Cleveland, OH, Marc E. Kasowitz, Marie V. Santacroce, Michael M. Fay, Julie R. Fischer, Aaron H. Marks, Kasowitz, Benson, Torres & Friedman, New York City, Mark S. Cheffo, Peter J. McKenna, Eric S. Sarner, Melissa A. Rule, Skadden, Arps, Slate, Meagher & Flom, New York City, Steven D. Bell, Craig A. Marvinney, Timothy J. Downing, Ulmer & Berne, Cleveland, OH, Timothy D. Johnson, Forrest A. Norman, III, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for defendants.

## ORDER

GWIN, Judge.

On April 5, 1999, the plaintiffs filed a motion to set aside the verdict and for a new trial pursuant to Fed.R.Civ.P. 59(a) [Doc. 867]. Plaintiffs' motion follows a jury trial and this Court's March 22, 1999 judgment entry in favor of defendant cigarette makers on all counts [Doc. 866]. For the reasons that follow, the Court denies the plaintiffs' motion.

In their motion, the plaintiffs say this Court should set aside the verdict and grant the motion for new trial because: (1) the

Court erred in instructing the jury that plaintiffs must show reliance to make out a predicate act of mail or wire fraud necessary to support their claim under the Ohio Pattern of Corrupt Activity Act; (2) the Court erred by asking the jury to determine the defendants' liability as to each plaintiff when completing the interrogatories and verdict forms; (3) the Court erred by giving the jury "hopelessly confusing" interrogatories on how to interpret the applicable statute of limitations; (4) the jury improperly considered extraneous news reports about the case during their deliberations; and (5) the jury's verdict was contrary to the weight of the evidence.

The Court considers these arguments and the responses thereto.

## I. Standard of Review

Federal Rule of Civil Procedure 59, which governs new trials and amendments of judgments, provides in pertinent part:

> (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the court of the United States....

Fed.R.Civ.P. 59(a).

The United States Supreme Court has identified several grounds for granting a new trial. In *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940), the Court stated:

> The motion for new trial may invoke the discretion of the court in so far as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instruction to the jury.

*Id.* at 251, 61 S.Ct. 189. The Sixth Circuit follows this view. *See Holmes v. City of Massillon,* 78 F.3d 1041, 1045–46 (6th Cir.), *cert. denied,* 519 U.S. 935, 117 S.Ct. 312, 136 L.Ed.2d 228 (1996); *Socks–Brunot v. Hirsch-*

*vogel Inc.,* 184 F.R.D. 113, 115 (S.D.Ohio 1999).

In *Holmes,* the Sixth Circuit Court of Appeals stated that courts generally have interpreted the Rule 59(a) language "to mean that a new trial is warranted when a jury has reached a 'seriously erroneous result.'" *Id.* at 1045–46 (citations omitted); *Socks–Brunot,* 184 F.R.D. at 115 (same). A new trial will be warranted to "prevent a miscarriage of justice" where a movant shows prejudice in the fairness of the trial or that the verdict is against the weight of the evidence. *Holmes,* 78 F.3d at 1047–48.

 The Sixth Circuit has held that courts should not overturn jury verdicts as against the weight of the evidence "unless the verdict was unreasonable." *Id.* (citing *J.C. Wyckoff & Assoc's, Inc. v. Standard Fire Ins. Co.,* 936 F.2d 1474, 1487 (6th Cir.1991)); *Duncan v. Duncan,* 377 F.2d 49, 52 (6th Cir.), *cert. denied,* 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 260 (1967). Similarly, a court should deny a motion for a new trial based on prejudice if the record shows that "such prejudice [was] cured by instructions of the court." *Holmes,* 78 F.3d at 1046–47 (citations omitted).[1]

Applying these factors to the instant case favors denying the plaintiffs' motion.

## II. Discussion

In their motion to set aside the verdict and for a new trial, the plaintiffs first argue a new trial is warranted due to legal error in the jury instructions and interrogatories. The plaintiffs' suggest the Court erred by instructing the jury that "reliance" was an element of mail or wire fraud. The instruction at issue states:

Reliance, Statement Directed to Plaintiffs or Beneficiaries

> To support their claims of mail fraud and wire fraud, plaintiffs must prove by a preponderance of the evidence that defendants made misrepresentations or omissions of material fact to the plaintiffs or their beneficiaries and the plaintiffs or their beneficiaries relied, to their detri-

---

1. *See also* 11 Wright & Miller, Federal Practice & Procedure, §§ 2805–2810 (2d ed.1995).

ment, on those misrepresentations or omissions.

The plaintiffs must establish that the defendant or defendants made representations to the plaintiffs.

Jury Instructions at 22–23.[2]

■ In their argument, the plaintiffs suggest surprise that reliance need be shown as an element of mail of wire fraud as predicate acts under the Ohio Pattern of Corrupt Activity Act, Ohio Rev.Code § 2923.34(F). Plaintiffs Iron Workers cite the Court's opinion and order dated October 20, 1998 at 20–21 (order denying class certification), and rely on *United States v. Merklinger*, 16 F.3d 670, 678 (6th Cir.1994); *Henderson v. United States*, 202 F.2d 400, 404 (6th Cir.1953), to support their argument.

The Court disagrees with the plaintiffs' interpretation of the October 20, 1998, order. First, Plaintiffs Iron Workers attempt to pull the Court's October 20, 1998 order out of context. This order was limited to the issue of class certification under Fed.R.Civ.P. 23. Second, in that order, the Court referenced *Merklinger* to illustrate that the Sixth Circuit has not required a showing of reliance in the *criminal* context. The *Merklinger* court makes a clear distinction between criminal and civil cases—stating that a plaintiff must prove reliance to recover damages in a civil case.[3] Third, at trial, the plaintiffs called Professor Ms. Teresa Ghilarducci to describe the nature and scope of information the Plaintiff Funds relied on when determining smoking-related policies. Professor Ghilarducci's testimony in this regard, and as tested on cross-examination, shows that the plaintiffs considered the element of reliance to be an issue in the case. Considering these circumstances, Plaintiffs Iron Workers' argu-

ment that the Court erred by instructing the jury on reliance is not persuasive.

■ The plaintiffs' argument that the Court erred by requiring the jury to determine the defendants' liability as to each named plaintiff also is not persuasive. Here, Plaintiffs Iron Workers suggest the Court should not have required proof "as to each plaintiff." The Court disagrees.

First, by order dated December 12, 1998, this Court trifurcated this action. The Court stated that it intended to conduct the trial in three phases: Phase I would include some damage evidence but focus on liability; Phase II would include damage evidence allegedly sustained by the named plaintiffs; Phase III would include damage evidence allegedly sustained by absent class members. This order put plaintiffs on notice that some damage evidence could be considered during Phase I. *See Iron Workers Local Union No. 17 v. Philip Morris*, 29 F.Supp.2d 825, 838 (N.D.Ohio 1998) (December 2, 1998 order).

Second, the plaintiffs did not object at trial to the style of the verdict form presented to the jury, despite being given an opportunity to do so. Here, the Court gave counsel an opportunity to review the jury instructions, the interrogatories and the verdict forms. Trial Transcript at 4458–4487. The parties made no objections on the verdict forms as proposed. Trial Transcript at 4474.

Lastly, a review of the verdict forms and interrogatories shows that the jury answered the interrogatories and completed the verdict forms consistently, determining that each defendant was not liable. Such consistency shows that the jury capably followed the instructions and completed the interrogatories and verdict forms.

---

**2.** Citing *Central Distributors of Beer, Inc. v. Conn.*, 5 F.3d 181, 184 (6th Cir.1993), *cert. denied*, 512 U.S. 1207, 114 S.Ct. 2678, 129 L.Ed.2d 812 (1994); *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir.1984).

**3.** In *Merklinger*, the court states:

Indeed, Defendant expressly recognizes that the mail and wire fraud statutes do not require proof that the intended victim was actually defrauded; the actual success of a scheme to defraud is not an element of either § 1341 or § 1343.... This implies that reliance is not

an element of mail or wire fraud. The authorities cited by Defendant in support of his claim to the contrary are cases in which a private plaintiff alleged mail fraud in a civil suit; *while it is true that such plaintiffs must prove reliance in order to recover damages,* it does not follow that the government must prove reliance in order to convict a mail fraud defendant.

16 F.3d at 678 (emphasis added). *See also* October 20, 1998 order at 26–28 (finding that the representative plaintiffs' claims may be typical despite some factual differences among class members).

■ As related, Plaintiffs Iron Workers' suggestion that the jury instructions or interrogatories were "hopelessly confusing" does not persuade the Court. In making this argument, the plaintiffs rely extensively on the post-trial affidavit of Ms. Una McCafferty, a juror in the case. In her affidavit, Ms. McCafferty states:

> 3. There were a number of factors that influenced our deliberations and the verdict we reached. I found the judge's instruction to the jury difficult to understand, and based on our discussion I believe that other jurors also found the instructions difficult to understand. While each juror was provided a copy of the instructions, only the foreperson, juror John Childs, was provided with the judge's interrogatories to the jury.
>
> 4. Among the instruction that I and, I believe, other jurors had difficulty understanding were those concerning the Corrupt Activity Act.... I believe that if I and other jurors had understood that we could have considered all the evidence presented in the case to show corrupt activity, and not been constrained by the 1986 date, we might have found in favor of the plaintiffs.

McCafferty Affidavit at ¶¶ 3–4.

Although enlightening, the Court cannot consider Ms. McCafferty's post-trial statement to impeach the jury's verdict here. Fed.R.Evid. 606(b) says that evidence about the thought processes of the jury, including juror confusion is not competent:

> (b) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations *or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict* or indictment *or concerning the juror's mental processes in connection therewith,* except that a juror may testify on the question

whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes. (Emphasis added)

See also *Rushen v. Spain,* 464 U.S. 114, 120, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) ("[A] juror generally cannot testify about the mental process by which the verdict was arrived.")

■ Even if the Court did consider this juror's statements, the plaintiffs' argument is not persuasive.[4] In the Sixth Circuit, there is a presumption that the jury followed the instructions given. *Holmes,* 78 F.3d at 1046. There is also a presumption that a court will not overturn a jury verdict because of the wording of the instructions where the instructions as a whole are not misleading and leave the reader with a sense of what the Court was asking. *Brown v. Tennessee Gas Pipeline Co.,* 623 F.2d 450, 453 (6th Cir. 1980); *Lilley v. BTM Corp.,* 958 F.2d 746, 751 (6th Cir.), *cert. denied,* 506 U.S. 940, 113 S.Ct. 376, 121 L.Ed.2d 287 (1992).

The plaintiffs also say they were prejudiced because the jury considered "extraneous" information during deliberations. Relying again on the post-verdict affidavit of Ms. McCafferty, the plaintiffs suggest that pretrial publicity and news articles reporting the plaintiffs were seeking $ 2 billion in damages influenced some jurors to find for the defendants. Ms. McCafferty states:

> 5. Another issue that arose during deliberations was the amount of damages at issue in the lawsuit. Before my selection as a juror, I had read in the newspaper that $2 billion in damages was at stake in this lawsuit.... We had not heard evidence of specific damages amounts, and we did not know how the $ 2 billion figure was

---

4. *See also United States v. Holloway,* 166 F.3d 1215, 1998 WL 833767, at *5 (6th Cir. Nov. 19, 1998) (recognizing that Fed.R.Evid. 606(b) prevents post-verdict juror testimony by limiting inquiry into jury decisions), *cert. denied,* — U.S. —, 119 S.Ct. 1284, 143 L.Ed.2d 376 (1999);

*United States v. Tines,* 70 F.3d 891, 898 (6th Cir.1995) ("Jury's interpretation and application of the court's instruction is part of the deliberative process."), *cert. denied,* 516 U.S. 1180, 116 S.Ct. 1280, 134 L.Ed.2d 225 (1996).

reached. I believe [sic], other jurors believed that if we decided in the plaintiffs' favor the judge could award damages up to $2 billion to the plaintiffs. We were concerned that our decision could result in such an award, when so little evidence of damages was presented during trial.

McCafferty Affidavit at ¶ 5.

Although the Court may consider Ms. McCafferty's testimony to the extent the testimony concerns "whether extraneous prejudicial information was improperly brought to the jury's attention," the plaintiffs do not compel the Court to set aside the verdict on these grounds. Fed.R.Evid. 606(b). The Court reaches this conclusion in light of the plaintiffs' opposition at trial to the Court conducting individual juror voir dire.

 At trial, Plaintiffs Iron Workers opposed the defendants' motion seeking individual juror voir dire specifically on the issue of pre-trial publicity. The plaintiffs argued that pre-trial publicity would not influence the jury pool:

Indeed, there has been little substantial media about this case which is set to begin trial. Accordingly, there is no reason to require individualized voir dire outside the presence of other potential jurors.... Under the circumstances of this case, nothing is merited or required.

Plaintiffs' Opposition to Defendants' Motion in Limine for Individual Juror Voir Dire, at 3–4 [Doc. 650]. Considering this, the plaintiffs' arguments complaining about extraneous information or influences are not persuasive.[5]

 Furthermore, even if the jurors were exposed to extraneous information about news reports, the Court took appropriate steps to instruct the jury to not consider such matters. Throughout the trial, the Court instructed the jury that their function was to consider only the evidence of liability during this phase. The Court instructed the jury on a number of occasions that they were not at this stage to determine damages. For example, on March 4, 1999, mid-way through the trial, the Court instructed the jury as follows:

Just to clarify something for the jury, at this time you're not going to make specific determinations as to the amount of damages if you find the plaintiff has established their case under the instructions of law I give you. You won't at this time decide the specific amount of damages.

You'll decide whether or not the plaintiff has established a right to damages, but you won't determine the amount of damages at this time. I'm going to instruct you to disregard that last question, but I'm giving you some guidance as to the instructions that you are going to follow as to you are not at this time going to be asked to decide the specific amount of damages.

Okay, clear as mud, right?

Trial Transcript at 2258–59. The Court gave similar instructions to the jury on March 16, 1999. Trial Transcript at 4487–8. Plaintiffs' counsel later reiterated during closing arguments that they were not asking the jury to determine damages in this phase. Trial Transcript at 4770–71.

The Court took adequate steps to properly instruct the jury on its role and responsibilities as the trial progressed. Again, the law of this Circuit presumes that the jurors followed the Court's instructions in this regard. *Holmes,* 78 F.3d at 1046.

 The plaintiffs last argue that the Court should set aside the verdict and grant a new trial because the jury's verdict favoring the defendants on all counts was against the weight of the evidence. The Court disagrees.

Generally, when a court determines that a verdict is against the weight of the evidence, the court "has a duty to grant a new trial in order to prevent a miscarriage of justice." *Holmes,* 78 F.3d at 1047. In this respect, a party moving for a new trial is entitled to

---

5. *See generally State v. Adams,* 141 Ohio St. 423, 426, 48 N.E.2d 861 (1943) (describing the rule aliunde as follows):

"The so-called aliunde rule, generally recognized by the courts since the day of Lord Mansfield who is supposed to have first announced it ... is to the effect that the verdict of a jury may not be impeached by the evidence of a member of a jury unless foundation for the introduction of such evidence is first laid by competent evidence aliunde, i.e., evidence from another source."

*Id.* at 427, 48 N.E.2d 861.

have the Court review the evidence and exercise its independent judgment on whether to afford a new trial. *J.C. Wyckoff & Assoc., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir.1991). "[T]he court must compare the opposing proofs, weight the evidence, and set aside the verdict it if of the opinion that the verdict is against the clear weight of the evidence." *Id.*

Here, the plaintiffs do not point to compelling evidence that suggests the jury verdict here was against the clear weight of the evidence. Accordingly, the plaintiffs' argument for a new trial on these grounds is not persuasive.

### III. Conclusion

For the reasons above, the Court denies the plaintiffs' motion to set aside the verdict and for a new trial [Doc. 876].

IT IS SO ORDERED.