Erin HOWARD, et al., Plaintiffs,

v.

HISTORIC TOURS OF AMERICA,
et al., Defendants.

No. CIV.A. 97–710 HHKJMF.

United States District Court,
District of Columbia.

Dec. 1, 1997.

Daniel M. Katz, Katz & Ranzman, P.C., Washington, DC, for Plaintiffs.

Burton John Fishman, Tucker, Flyer & Lewis, Washington, DC, for Defendants.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This diversity action is premised on allegations of sexual harassment of the plaintiffs by their male co-workers and supervisors during their employment by the defendant corporations. Liability is premised on the D.C. Human Rights Act, D.C.Code §§ 1–2511 et seq.[1] The defendants seek to discover from plaintiffs their personal or sexual relationships with their co-workers other than those they charge harassed them. Additionally, one defendant corporation is the wholly owned subsidiary of the other and objects to plaintiffs' incorporating their responses to one defendant's interrogatories in their responses to the other's. After consideration of the defendants' Motion to Compel [# 16], the plaintiffs' response thereto [# 17], and the oral argument held on this motion on November

1. The elements of a cause of action premised on sexual harassment under this statute are set out in *Howard University v. Best,* 484 A.2d 958, 978–981 (D.C.1984).

26, 1997, the Court finds that the defendants' motion must be denied.[2]

### The Sexual Harassment Charged

Plaintiffs have now made explicit in their responses to defendants' interrogatories their claim of sexual harassment against the defendants' employees, Kenny Tucker, Donald Burridge, Skip Shankle, and Al Davis.

### Plaintiff Erin Howard

1. *Kenny Tucker.* Ms. Howard complains that Tucker touched her in a sexually offensive manner while he tried to kiss or hug her. On one occasion he put his hand on her leg, moved his face close to hers and asked if he could kiss her. On another occasion, he called her into a back office, pushed her against her wall so that his chest was rubbing against hers, and demanded to know where his kiss was. He also is alleged to have put his hand on her leg and tried to hug her when they were alone. He told her that he had obscene dreams about her, in which she was naked. Tucker is alleged to have bragged about his sexual prowess in her presence and the presence of others and to have asked Ms. Howard about her sexual experiences. When they were alone, he asked her when she was going to make his dreams come true, that he had heard that she was good in bed, and asked when they were going to have sex. *Plaintiff Erin Howard's Responses to Defendant Old Town Trolley Tours of Washington. Inc's First Set of Interrogatories. Response to Interrogatory No. 1*

2. *Donald Burridge.* Plaintiff Howard alleges that Burridge took her on business errands and, on one occasion, took her to his home and asked her if she would like to try out his bed. On another occasion, he told her that she ought to wear really loose clothing or a bathing suit. On another occasion, Burridge is alleged to have massaged her leg and tried to unzip her boot. *Id.*

3. *Skip Shankle.* Shankle is alleged to have called plaintiff Howard a "dumb blond" and to have joked with her about her knowledge of various sexual positions. He is said to have "ogled" her and stared at her chest on several occasions, commenting on how her clothing fit her. He told her that she tried to make her voice sexy and imitated the way she supposedly did this. He mimicked her on one occasion, pretending to have an orgasm. *Id.*

4. *Al Davis.* Davis is alleged to have grabbed plaintiff Howard on one occasion, pushing his face close to hers. He demanded that she have lunch with him. Rebuffed, he asked her for a date and to go home with him. When she refused, he grabbed her again. He then followed her about the office for 20 or 30 minutes. *Id.*

### Plaintiff Kathy Davenport

1. *Kenny Tucker.* Plaintiff Davenport complains that Tucker put his arm around her and, upon Tucker's promotion to Head Conductor, explicitly asked her for sex. He tried to kiss her nearly every morning in June, 1994. He badgered her for the phone number of her friend and made an explicit sexual reference to what he wanted her friend to do for him. He referred to plaintiff Davenport as a "bitch." On another occasion, he tried to kiss her and her rebuff led to a physical struggle which caused her to ultimately fall to the floor. He got on top of her and mimicked having intercourse with her. In her presence, he spoke of the beau-

---

**2.** The Court is mindful of the relevant cases cited by the parties in their pleadings and at oral argument. However, as those cases make clear, decisions in this area, as with all evidentiary ruling, are *sui generis;* thus, the cited cases provide little guidance for determining the resolution of this dispute. Moreover, none of those cases address the issue of the disproportionality between the alleged conduct by the defendants' male employees and the evidence of "sexually provocative" conduct by the plaintiffs sought in discovery. This Court is convinced that such an analysis is crucial.

ty of one of plaintiff Howard's body parts and how Ms. Howard looked after she was caught in a rain storm. Tucker is alleged to have hugged and kissed all of the female employees on more than one occasion and to have discussed in explicit sexual terms his dates with other employees. *Plaintiff Kathy Davenport's Responses to Defendant Own Town Trolley Tours of Washington Inc's First Set of Interrogatories Response to Interrogatory No. 1.*

2. *Al Davis.* Ms. Davenport complains that he called her a "doll" and stroked her calf on one occasion. He badgered her for dates and on one occasion patted her on her buttocks and said that he wanted to be her sugar daddy. On one occasion, Davis is alleged to have handed her paycheck and said that she could have the money and him.[3]

### Discovery Disputes

■ The current dispute first centers on the plaintiffs' answers to defendants' interrogatories which asked them whether they had a personal relationship with any one in defendants' employ and if any of these relationships "were of a sexual nature." *Interrogatory No. 7.* The plaintiffs objected to the word "personal" as vague and, without waiving that objection, answered the interrogatory by stating that they did not have a "sexual relationship with any of the Old Town Trolley employees who made unwanted sexual advances" toward them. *Plaintiff Erin Howard's Responses to Defendant Old Town Trolley Tours of Washington, Inc.'s First Set of Interrogatories. Response to Interrogatory No. 7; Plaintiff Kathy Davenport's Responses to Defendant Old Town Trolley Tours of Washington. Inc.'s First Set of Interrogatories. Response to Interrogatory No. 7,* Defendants insist, however, on knowing whether plaintiffs had sexual relationships with any of their employees, whether or not they ever harassed plaintiffs. Plaintiffs resist saying any thing more than they did not have sexual relationships with the persons who they allege harassed them.

### Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 412(b)(2)

While Fed.R.Civ.P. 26(e) permits discovery of information which is reasonably calculated to lead to the discovery of admissible evidence, even if the information is itself not admissible at trial, Fed.R.Evid. 412 speaks only to the relevance of the information subject to it. Federal Rule of Evidence 412(b)(2) provides, in pertinent part:

> In a civil case, evidence offered to prove the sexual behavior or sexual predisposition of any alleged victim is admissible if it is otherwise admissible under these rules and its probative value substantially outweighs the danger of harm to any victim and unfair prejudice to any party.

It could be said, that, since the standards for discovery are more indulgent, the discoverability of information pertaining to the sexual behavior of victims of sexual harassment[4] should not be guided by the policies animating a rule pertaining to the admissibility of evidence. The advisory committee's note to Fed.R.Evid. 412 makes clear, however, that the policies underlying Fed.R.Evid. 412 must inform the application of Fed.R.Civ.P. 26 when information subject to Fed. R. Evid 412, if offered at trial, is sought by discovery:

> The procedures set forth in subdivision (c) do not apply to discovery of a victim's past sexual conduct or predisposition in civil cases, which will be continued to be governed by Fed.R.Civ.P. 26. In order not to undermine the rationale of Rule 412, however, courts should enter appropriate orders pursuant to Fed.R.Civ.P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality. Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered

---

3. Ms. Davenport also alleges that Robertino Smith tackled her, causing her to fall into some lockers, when she turned him down for a date. Smith worked for the defendant corporations but is not specifically named in the complaint as a person who harassed her and Ms Howard. *Id.*

4. It is clear from the advisory committee's note to the 1994 amendment to Fed.R.Evid. 412 that the rule applies to victims of sexual harassment. Fed.R.Evid. 412 advisory committee's note.

would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery. In an action for sexual harassment, for instance, while some evidence of the alleged victim's sexual behavior and/or predisposition in the workplace may perhaps be relevant, non-work place conduct will usually be irrelevant. *Cf. Burns v. McGregor Electronic Industries, Inc.,* 989 F.2d 959, 962–63 (8th Cir.1993) (posing for a nude magazine outside work hours is irrelevant to issue of unwelcomeness of sexual advances at work). Confidentiality orders should be presumptively granted as well.

Fed. P. Evid. 412, advisory committee's note.

The logic behind the note is self-evident: one of the purposes of Fed.R.Evid. 412 was to reduce the inhibition women felt about pressing complaints concerning sex harassment because of the shame and embarrassment of opening the door to an inquiry into the victim's sexual history. This shame and embarrassment, inhibiting them from invoking the legal remedies made available to them by laws such as the D.C. Human Rights Act, exists equally at the discovery stage as at trial and is not relieved by knowledge that the information is merely sealed from public viewing.

Since permitting the defendants to demand plaintiffs tell them in discovery about their sexual behavior with other co-workers is as inhibitory of their exercising their legal rights as answering the same question at trial, the Court is convinced that compelling an answer which the amended rule may not permit and protecting it from further disclosure until trial nevertheless violates the clear intendment of Fed.R.Evid. 412. The Court therefore will decide whether plaintiffs can be compelled to answer the question more particularly than they have.

### Theory of Admissibility

The defendants contend that they have the right to present evidence to the fact finder of the plaintiffs' voluntary sexual affair with co-workers other than the named employees so that the jury can determine whether the named employees reasonably believed that their sexual advances were welcome. Implic-

it in that contention are two suppositions: (1) that a plaintiff proceeding under the D.C. Human Rights Act must prove that the harassing employees's sexual advances and other lewd behavior was unwelcome, and (2) that her provocative behavior is admissible to establish welcomeness.

The section of the D.C. Human Rights Act upon which plaintiffs must premise their case, D.C.Code § 1–2512(a)(1), is similar to the provision in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), upon which a federal claim of sexual harassment would be placed. To date, all that we know, however, is that the District of Columbia Court of Appeals has indicated that sexual harassment in the workplace is cognizable under the D.C. Human Rights Act, must be unwelcome, and that the jury is to consider *inter alia* the relationship between the harassing party and the plaintiff. *Howard University v. Best,* 484 A.2d 958, 981 (D.C. 1984). Assuming defendants' best case, that the D.C. Court of Appeals would follow the Supreme Court's lead and interpret the D.C. Human Rights Act as the Supreme Court has interpreted Title VII in *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) and permit a jury to consider a plaintiff's supposedly provocative behavior as bearing on whether the harassing conduct was welcome, it does not follow that these plaintiffs can be compelled to tell the defendants whether they engaged in sexual behavior with other employees.

First, that the plaintiffs may have engaged in sexual behavior with their co-workers other than the harassing employees might be construed as welcoming the harassing conduct complained of only if the harassing employees knew of it. If the affair was secret, it could not have affected anyone else's perception and consequential behavior. Yet, the question defendants propound is not limited to sexual behavior which plaintiffs had reason to believe would be known by the harassing employees. Without such a restriction, it is impossible for the information sought to be relevant, (or to lead to relevant evidence), as to the harassing employees' knowledge and the consequential reasonableness of their conclusion that the plaintiffs would welcome

their sexual advances. Thus, the defendants fail the first test imposed by Fed.R.Evid. 412(b)(2), establishing that plaintiffs' sexual behavior with other employees is "otherwise admissible", i.e., relevant under Fed.R.Evid. 401.

Moreover, if defendants were to narrow the question and ask plaintiffs only if they engaged in sexual conduct with other employees and had reason to believe that the harassing employees knew of that behavior, that question would still not be permissible under Fed. R. Evid. 412(b)(2). That rule requires that the probative force of the evidence of a victim's sexual behavior substantially outweigh the harm to her of forcing her to disclose that behavior. Such proof has probative force only if the proposition that their knowledge that she engaged in such behavior made it more reasonable for them to conclude that she would welcome their sexual advances becomes easier to accept than it would be without that proof. Fed. R.Evid. 401 (definition of relevant evidence as having tendency to make existence of a pertinent fact more probable than it would be without the evidence). To so conclude one would have to say that knowledge of a woman's engaging in a consensual relationship with a co-worker makes reasonable the perception that she welcomed other sexual advances at her place of employment. But, that perception would be reasonable only if it fairly could be said that a man who learns of a woman's affair is justified in believing that she will be as willing to have a sexual relationship with him as she was to have one with her lover. While such a perception might have been justified, in men's minds, in Victorian England and Wharton's "Age of Innocence" in America, when men discriminated between the women they married and the women they slept with, it has nothing to do with America in 1997. While religious and other leaders condemn it, sexual behavior, outside of married life, between consenting adults is so common and so commonly accepted by the society, that it is absurd to think that any man in 1997 can be justified in believing that a woman who engages in it is so degraded morally that she will welcome his sexual advances without protest.

Since a man cannot seriously contend in 1997 that any woman who has a sexual relationship with her co-worker is morally degraded, justifying his conclusion that she will not resist him, he is reduced to arguing that because a woman took one co-worker as a lover he is justified in his belief that she will accept him and welcome his sexual advances. That, in all but his imagination, is *non sequitur*. That a woman has a relationship with one co-worker hardly justifies his conclusion that she will welcome all of his advances seeking the same kind of relationship.

Moreover, even if one could argue the legitimacy of deducing from a woman's having a sexual relationship with one co-worker a willingness to accept an invitation for a similar relationship from another co-worker, there is a striking disproportion in this case between any consensual behavior by the victims and the sexual harassment of which they complain. A woman who does not resist a co-worker's request for a date, leading to a sexual relationship, may welcome another co-worker's similar request but it is absurd to suggest that she would also welcome his cruder and bolder sexual advances. In this case, the harassment complained of is coarse, brutish and assaultive to the point of a violation of the criminal law. Defendants cannot seriously be contending that a woman who voluntarily has a sexual relationship with a co-worker thereby welcomes the kind of behavior to which these women claim to be subject. There is such a gross disproportion between their voluntary sexual behavior and what they claim to have been subjected to that no reasonable jury could possibly find that they welcomed what they were subjected to, unless one is ready to concede the illogical—that a woman who engages in voluntary sexual behavior with one co-worker welcomes the sexual behavior of other co-workers no matter how reprehensible and gross it is.

A final point. Interestingly, the advisory committee's note requires this Court to take into consideration whether the information sought from the victim "cannot be obtained except through discovery." while the availability of information from other sources is usually irrelevant in a discovery dispute, the

interplay of Fed.R.Evid. 412(b)(2) and Fed. R.Civ.P.26 makes it significant in this case. The advisory committee's note to Fed. R.Evid. 412 states that, if the information can be secured by other means, the victim should be spared the needless embarrassment of providing it. In this case, defendants can secure the information about alleged consensual sexual relationships with plaintiffs from persons who are or were in their employ. Since they can, the information can be secured other than through discovery which, in itself, militates against forcing plaintiffs to provide it.

Nothing in this opinion is inconsistent with the Supreme Court's decision in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In that case the District Court had admitted evidence of the plaintiff's provocative speech and dress and the Court of Appeals had held that the evidence "had no place in the litigation." *Id.* at 68, 106 S.Ct. at 2406. The Supreme Court held that the Court of Appeals was wrong and indicated that, on remand, the District Court could weigh the probative force of that evidence against its prejudice. Fed.R.Evid. 403. That case hardly stands for the proposition that so long as evidence has some theoretical relationship to plaintiff's welcoming the sexual advances complained of it must be admitted. Instead, *Meritor* requires behavior claimed to be welcoming to be admitted only if its probative force exceeds its potential for prejudice. Thanks to Fed.R.Evid. 412(b)(2), which was enacted after *Meritor*, the balancing must now be performed in accordance with the more stringent requirements of the new rule. But, before that balancing occurs, the evidence must first be admissible, i.e. relevant. Because it does not inquire into sexual behavior of which the harassing employees knew or had reason to know, it seeks information which cannot possibly be relevant to whether those employees thought the plaintiffs would welcome their advances and is therefore utterly unlike the provocative speech and dress in *Meritor* which, one supposes, all the employees could see. Additionally, as has been explained, even if one amended the interrogatory to seek only the plaintiffs' sexual behavior with other employees of which the harassing employees knew, the probative force of that evidence is premised on three hopelessly illogical propositions: (1) that a woman who has a sexual relationship with one co-employee is so morally degraded that she welcomes a similar relationship with any other employee; (2) that a woman who is sexually attracted to one employee and yields to that attraction is equally attracted to any other employee and would welcome his advances; and (3) that a woman who has a sexual relationship with one employee welcomes the sexual advances of another employee, no matter how gross, crude and boorish. That these propositions are so illogical and at variance with human experience means that what little, if any, probative force the evidence defendants seeks is utterly overwhelmed by the harm done these victims by being forced to answer them. Additionally, since the evidence is either irrelevant or possesses minimal probative force, defendants are not unfairly prejudiced by not securing it from plaintiffs. They can, if they see fit, secure it (if it exists) from others and the trial judge can rule on its admissibility. In the meanwhile, Fed. R.Evid. 412(b)(2) prohibits plaintiffs from being compelled to provide it and defendants' motion to compel answers to the interrogatories at issue will be denied.

### Defendants Request for Supplemental Answers

■ Plaintiffs have named as defendants Historic Tours of America, Inc.("Historic") and Old Town Trolley Tours of Washington, Inc.("Old Town"). Historic owns all of Old Town's stock and the same four men are officers and directors of both companies. For these and other reasons, disclosed by discovery, plaintiff will predicate the liability of Historic upon the actions of the persons employed by Old Town who allegedly sexually harassed the plaintiffs. Plaintiff will claim that Historic is responsible for the acts of Old Town's employees under an "integrated enterprise" theory which permits the parent to be liable for the discriminatory acts of its subsidiary's employees.

In Interrogatory No. 1, Historic asked plaintiff when she complained to Historic's managers about the sexual harassment she

**54**

alleged occurred. In Interrogatory No. 2, Old Town asked plaintiffs when she complained to Old Town's managers about that harassment. Responding to Old Town's interrogatory, plaintiffs specified in detail the complaints they made to various persons employed by Old Town. Responding to Historic's interrogatory, plaintiffs incorporated their answers to Old Town's interrogatory and added an additional fact. Plaintiffs did the same thing when Historic asked them (1) what facts supported that contention that Historic was aware or should have been aware of the conduct about which they complained, (2) to identify all actions they took with reference to Historic indicating their opposition to the sexual harassment they alleged, (3) the facts which supported their contention that Historic failed to taken corrective action with respect to their complaints, and (4) what specific action they requested Historic to take to meet their complaints of sexual harassment. When Historic asked plaintiffs to provide the factual basis for their denial of Historic's defenses and for the names of persons who had knowledge relating to their action, plaintiffs incorporated their responses to the same interrogatory propounded by Old Town.

More significantly, when Historic asked plaintiffs to explain why they consider Historic their employer for the purposes of the application of the D.C. Human Rights Act, plaintiffs specified all the information upon which they would rely for their assertion that Historic and Old Town a single, common enterprise.

Dissatisfied with these responses, Historic demands their supplementation. The parties then quarrel about whether or not the facts support plaintiffs' claim of a common enterprise in their submissions and renewed the argument before this Court. But, this is a discovery dispute and whether or not the facts justify the imposition of liability upon Historic will be decided by the trial judge and is therefore beyond this Court's jurisdiction. As to supplementation, Historic must have propounded the interrogatories to ascertain plaintiffs' theory of its liability. It accomplished its purpose. It now knows that

plaintiffs are relying on the common enterprise theory, imposing liability on Historic for what Old Town's employees did. Plaintiffs therefore have nothing else up their sleeves and are not relying on any acts by Historic's employees, at least in their capacity as Historic employees. In what is probably an excess of caution, the Court will nevertheless preclude plaintiffs from advancing any theory of liability other than the theory that the relationship between Historic and Old Town renders them a common enterprise and from eliciting any facts at trial concerning Historic's liability upon any other theory.

An order, implementing this decision, is entered herewith.