**Dujuana SOCKS–BRUNOT, Plaintiff,**

**v.**

**HIRSCHVOGEL INCORPORATED, Defendant.**

**No. C2–97–381.**

United States District Court, S.D. Ohio, Eastern Division.

Jan. 21, 1999.

Matthew L. Alden, Alden & McVay Co., LPA, Columbus, OH, for Plaintiff.

Andrew C. Smith, Vorys, Saters, Seymour & Pease, Columbus, OH, for Defendant.

## OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court for consideration of plaintiff's Motion for a New Trial made pursuant to Federal Rule of Civil Procedure 59. (Doc. 73) This case was tried to a jury, which, after a six-day trial, returned a verdict in favor of the defendant. For the reasons that follow, a new trial is ordered.

## I.

■ Federal Rule of Civil Procedure 59 provides that a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the Courts of the United States ...." Fed.R.Civ.P. 59(a)(1). The Rule has been interpreted to mean that a new trial is warranted when a jury has reached a "seriously erroneous result" as evidenced by one or more of the following: "(1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion...." *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045–46 (6th Cir.1996) (citations omitted).

The plaintiff seeks a new trial on the third ground set forth in *Holmes*. In this sexual harassment, hostile work environment case, the defendant presented an abundance of evidence to support its theory that, if a hostile work environment based upon sexual harassment existed, the plaintiff herself either created the environment or welcomed the conduct. Plaintiff argues that all such evidence should have been first sifted through the requirements of Federal Rule of Evidence 412 and then much, if not all, of such evidence ultimately should have been excluded.

In *Logan v. Dayton Hudson*, 865 F.2d 789, 790 (6th Cir.1989), now Chief Judge Martin noted that, "[i]f a trial court has improperly admitted· evidence and a substantial right of a party has been affected, the trial court may order a new trial ...." Similarly, then Judge Antonin Scalia wrote in *Jordan v. Medley*, 711 F.2d 211, 218–19 (D.C.Cir.1983) that, if evidence is erroneously admitted, the court must then consider whether such error affected the outcome of the case. As the Supreme Court has noted, "[i]f one cannot say, with fair assurance ... that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Kotteakos v. United States*, 328 U.S. 750, 756, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

Upon consideration of the instant Motion for New Trial, the foregoing analysis makes clear that the Court must first determine whether certain evidence was erroneously admitted. If such error occurred, the Court must then consider whether a substantial right of a party has been affected and whether the trial itself was unfair to the moving party. While consideration of the first criterion in the context of this case involves an application of the Federal Rules of Evidence to the facts, the second criterion necessarily involves a more expansive view of the evidence presented at trial in order to determine whether the conduct of the trial was fundamentally unfair.

## II.

The case as presented to the jury involved the claims of the plaintiff that she was subjected to a hostile work environment based upon sexual harassment.[1] While the evidence considered by the jury will be more fully discussed below, the plaintiff claims that her supervisor, Charles Benz, Comptroller of Hirschvogel Incorporated ("Hirschvogel"), · engaged in sexually explicit speech which was both vulgar and demeaning.

These comments, according to plaintiff, created a hostile work environment which

---

1. The claims were based upon Title VII, 42 U.S.C. § 2000e *et seq.,* and Ohio Revised Code Section 4112.01, *et seq.*

ultimately forced her to resign from her employment. According to the plaintiff's testimony, Bentz made repeated comments as to the size of her breasts (Transcript of Trial, *Socks–Brunot v. Hirschvogel Incorporated,* Case No. C2–97–381., Vol I at 189)[2]; asked her what type of condoms she used (Vol. II at 8–9); asked her to sit on his lap (Vol. II at 7); told her that he knew she could not go without sex for more than three to four days (Vol. I at 188); remarked that her lipstick made her look like a whore (Vol. II at 11–12); and told her that a co-worker wanted to have sex with her. (Vol. II at 14–15) The plaintiff also testified that Bentz told her, "[y]ou want me ... why don't you just admit it." (Vol. II at 39) Additionally, Bentz asked her to bring in the videotape made of her delivering her son so he could "see another side" of her. (Vol. I at 207–208)

Plaintiff also offered evidence to show that Bentz had sexually harassed another employee, Cindy Lehman, who, together with plaintiff, complained directly to the president of Hirschvogel. (Vol. I at 223) Thereafter, the president, while announcing and publicizing a new sexual harassment program, named the alleged harasser, Charles Bentz, as one of the contact persons to whom sexual harassment complaints could be made. (Vol. II at 134)

The defendant offered several defenses to plaintiff's claims. Evidence was offered that the defendant-corporation took steps to prevent sexual harassment by formulating and implementing a detailed sexual harassment program. In addition, testimony was adduced to the effect that the plaintiff initiated conversations with co-workers, including Bentz, as to topics of a sexual nature. Further, Bentz and other witnesses testified that many of the crude and explicit comments that plaintiff claimed were made by Bentz (and several of which he admitted) followed equally crude and explicit comments by the plaintiff.

### III.

 ██ law has correctly recognized for some time that statutory prohibitions against

discrimination based upon sex include claims for sexual harassment in the workplace. *See, e.g., Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). An actionable claim for sexual harassment need not include explicit demands for sexual favors backed by the authority of a supervisor. Indeed, a sexual harassment plaintiff may state a cognizable cause of action under Title VII for sexual harassment even if his or her supervisor has not made specific threats of demotion or promises of promotion in exchange for sex. A claim may be so established by evidence demonstrating that the plaintiff was subjected to severe, pervasive and unwelcome harassment based upon her sex. *Meritor,* 477 U.S. at 67, 106 S.Ct. 2399.

In cases involving express demands for sex by a supervisor, current Federal Rule of Evidence 412 clearly prohibits the admissibility of any evidence offered to show other sexual behavior or the sexual predisposition of the alleged victim. Fed.R.Evid. 412(a)(1) and (2). Former Federal Rule of Evidence 412, enacted as part of the Privacy Protection for Rape Victims Act of 1978, Pub.L. No. 95–540, 92 Stat.2046, was designed to protect rape victims from intrusive and prejudicial questioning as to other sexual conduct or predisposition in the course of a criminal trial or hearing. As noted by the sponsors of the Act, "[s]uch evidence quite often serves no real purpose and only results in embarrassment to the rape victim and unwarranted public intrusion into her private life." 124 Cong.Rec. H11944 (daily ed. Oct. 10, 1978) (statement of Rep. Mann) (quoted in 28 U.S.C.Fed.R.Evid. 412 Historical Note); *see also* Jacqueline H. Sloan, Comment, *Extending Rape Shield Protection to Sexual Harassment Actions: New Federal Rule of Evidence 412 Undermines Meritor Savings Bank v. Vinson,* 25 SW.L.R. 363 (1996).

Current Rule 412, enacted as part of the Violent Crime Control and Law Enforcement Act of 1994, applies the same logic to civil lawsuits involving claims of "sexual miscon-

---

**2.** Subsequent references to the transcript of the trial in this matter shall be referred to as "Vol. ___ at ___."

duct." Current Rule 412 states in its entirety:

(a) **Evidence generally inadmissible.—** The following evidence is not admissible in any civil or criminal proceeding involving alleged sexual misconduct except as provided in subdivisions (b) and (c):

(1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.

(2) Evidence offered to prove any alleged victim's sexual predisposition.

(b) **Exceptions.—**

(1) In a criminal case, the following evidence is admissible, if otherwise admissible under these rules:

(A) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury or other physical evidence;

(B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution; and

(C) evidence the exclusion of which would violate the constitutional rights of the defendant.

(2) In a civil case, evidence offered to prove the sexual behavior or sexual predisposition of any alleged victim is admissible if it is otherwise admissible under these rules and its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party. Evidence of an alleged victim's reputation is admissible only if it has been placed in controversy by the alleged victim.

(c) **Procedure to determine admissibility.—**

(1) A party intending to offer evidence under subdivision (b) must—

(A) file a written motion at least 14 days before trial specifically describing the evidence and stating the purpose for which it is offered unless the court, for good cause requires a different time for filing during trial; and

(B) serve the motion on all parties and notify the alleged victim or, when appropriate, the alleged victim's guardian or representative.

(2) Before admitting evidence under this rule the court must conduct a hearing in camera and afford the victim and parties a right to attend and be heard. The motion, related papers, and the record of the hearing must be sealed and remain under seal unless the court orders otherwise.

The clear language of Rule 412 prohibits the introduction of evidence in either a civil or criminal sexual misconduct case which implicates the sexual behavior or the alleged sexual predisposition of the victim. In a rape case, Rule 412, and common sense as well, prohibit evidence of an alleged victim's prior sexual activity. The Rule reflects the fact that whether a victim had consensual relations with an uninvolved third-party is not at all probative of whether a rape occurred.

The same logic clearly applies, for example, in a civil lawsuit in which a supervisor is accused of firing a subordinate after the employee refused demands for sex. The defendant may not offer evidence that the employee had engaged in sexual conduct with other co-workers or supervisors. Such evidence is both intrusive and, as importantly, without any relevance. Employees are free to engage or not engage in amorous conduct with co-workers. The fact that an employee entered into a consensual relationship with one co-worker or supervisor does not mean that he or she has invited *quid pro quo* demands from a supervisor. That Federal Rule of Evidence 412 prohibits such testimony is beyond debate.

The issue in this case is whether Rule 412 prohibits or limits testimony offered by the defendant-employer that the plaintiff spoke to co-employees about personal, sexual matters, and therefore invited the crude sexual comments from her supervisor. The first matter to be resolved is whether Rule 412 even applies to the question. While the Rule itself provides no direct answer to that question, both the Advisory Committee Notes and subsequent case law aid in the analysis.

In the 1994 amendments to Rule 412, Congress also adopted the text and supporting Advisory Committee Note of the Advisory Committee on Criminal Rules of the Judicial Conference. Pub.L. No. 103–322, Title IV, Subtitle A, Ch. 4 at 40141(b), 109 Stat. 1919 (1994). Rule 412 applies to evidence offered to prove that a victim of sexual misconduct in a civil case either (a) engaged in other sexual behavior, or (b) had a sexual predisposition. Neither of the terms "sexual behavior" or "sexual predisposition" is defined.

The Advisory Committee Notes, however, include a further analysis by stating under subdivision (a) "... unless the (b)(2) objection is satisfied, evidence such as that relating to the alleged victim's mode of dress, speech, or life style will not be admissible." Further, the Advisory Committee Notes accompanying Rule 412(c) state that, "[i]n an action for sexual harassment, for instance, while some evidence of the alleged victim's sexual behavior and/or predisposition in the work place may perhaps be relevant, non-work place conduct will usually be irrelevant." Finally, the Advisory Committee Notes make two additional references to the fact that Rule 412 applies to claims of sexual harassment. "Rule 412 will, however, apply in a Title VII action in which the plaintiff has alleged sexual harassment." Advisory Comm. Notes, ¶ 4 (introduction). Additionally, the Committee noted that "... Rule 412 applies in any civil case in which a person claims to be the victim of sexual misconduct, such as actions for sexual battery or sexual misconduct." Advisory Comm. Notes to subdivision (a).

■ The Advisory Committee Notes leave no doubt that Rule 412 is intended to apply to sexual harassment cases. Unless Rule 412(b)(2) is satisfied, as further described below, evidence of the plaintiff's speech, lifestyle, sexual behavior, or predisposition is inadmissible. Further, non-workplace sexual conduct is also presumptively inadmissible.

The limited number of cases interpreting Rule 412 are in accord with this conclusion. In *Sheffield v. Hilltop Sand & Gravel Co.*, 895 F.Supp. 105 (E.D.Va.1995), the court addressed the question of whether Rule 412 applied in a sexual harassment case. The defendant argued, as does Hirschvogel, that the plaintiff's conduct sought to be explored was relevant to the issue of "welcomeness" and was therefore beyond the scope of Rule 412. *Id.* at 108. According to the defendant therein, such evidence was not offered to show "predisposition" or other "sexual behavior" which, as previously described, is presumptively inadmissible subject to the requirements of the Rule. *Id.*

The district court rejected the argument. The evidence sought to be offered by the defendant included the plaintiff's description of her sexual relations with her husband, and the plaintiff's use of vulgar language in the workplace. *Id.* The district court concluded that both categories of evidence "endeavor to establish the plaintiff's sexual behavior and her predisposition to engage in such conduct." *Id.* at 108. Accordingly, the court concluded that Rule 412 must govern the admissibility of such conduct.

Similarly, in *Barta v. City & County of Honolulu*, 169 F.R.D. 132, 136 (D.Haw.1996), the court found that Rule 412 applied in a case alleging sexual harassment. While the decision involved the relationship of Rule 412 with Federal Rule of Civil Procedure 26, which governs the scope of pre-trial discovery, the court refused, on the authority of Rule 412, to permit questioning of the plaintiff as to her off-work conduct. *Id.* at 137.

Finally, in *Howard v. Historic Tours of America*, 177 F.R.D. 48 (D.D.C.1997), the defendants sought pre-trial discovery of any prior sexual partners of the two plaintiffs. The defendants claimed that since the plaintiffs had alleged sexual harassment, they could defend by demonstrating that plaintiffs' prior sexual conduct disproved their claim that the offensive conduct was "unwelcome." *Id.* at 51. Further, defendants claimed that plaintiffs' provocative behavior was also admissible on the issue of "unwelcomeness." *Id.*

The court had no difficulty in finding that Rule 412 clearly limited the evidence which the defendants sought to elicit. The court first noted that any conduct of the plaintiffs unbeknownst to the alleged harassing employees was thoroughly irrelevant. *Id.* Fur-

ther, the court found the fact that a plaintiff may have had consensual sex with one co-worker does not in any way justify an assumption by another co-worker that his workplace advances would therefore be welcomed. *Id.* at 52. Based upon Rule 412, the court prohibited the defendants from seeking such evidence through discovery. *Id.*

■ This Court concludes that Rule 412 clearly applies to a civil case involving sexual harassment and that the admissibility of instances of a prior sexual conduct or speech is limited by the terms of the Rule. While relevant evidence is generally admissible under Federal Rule of Evidence 403, evidence subject to Rule 412 is presumptively inadmissible, even when offered to disprove "unwelcomeness" in a sexual harassment case.

## IV.

Prior to trial, the defendant did not move, pursuant to Rule 412(c), for leave of court to offer evidence relating to "sexual predisposition" or "sexual behavior" of the plaintiff. As described above, such evidence includes the plaintiff's mode of speech and lifestyle as well as her behavior or predisposition in the workplace. While Rule 412 does not render this type of evidence categorically inadmissible, the Rule does provide for privacy by sealing the record before decision (and thereafter if rendered inadmissible). Further, such evidence is admissible only if "it is otherwise admissible under these rules and its probative value substantially outweighs the danger of harm to any victim ..." Fed. R.Evid. 412(c)(2).

Throughout these proceedings, the defendant has maintained that Rule 412 is inapplicable to any evidence relating to "unwelcomeness." It argues that evidence relating to any prior sexual conduct which she discussed at work is admissible, not as evidence of sexual predisposition or other sexual behavior, but as direct evidence that she wel-

comed or even created the sexually-charged environment.

As an initial matter, the Court rejects this argument. Evidence tending to prove *both* prior sexual conduct of the plaintiff and workplace conversations of the plaintiff is covered by Rule 412. Generally, evidence admissible for one purpose but inadmissible for another may be heard by a jury, pursuant to Federal Rule of Evidence 105. The general rule is inapplicable with regard to evidence covered by Rule 412. Under Rule 412, procedures must be followed, including *in camera* proceedings which require pre-trial resolution of the admissibility issues; the Rule also provides a fundamentally different balancing test as to admissibility than that provided by the general relevance standard found in Federal Rule of Evidence 403.

On June 29, 1998, the plaintiff filed a motion *in limine* based upon Rule 412 and sought a pre-trial hearing pursuant to subpart (c)(2). The plaintiff sought to limit introduction of any testimony to the effect that she engaged in consensual sexual relationships before marriage, or that she had engaged in relations with a former supervisor while employed by an unrelated and former employer.

Prior to trial, the defendant made no attempt to comply with Federal Rule of Evidence 412(c)(2) and sought no pre-trial determination as to whether evidence relating to sexual speech or conduct of the plaintiff was admissible. The defendant opposed the plaintiff's motion *in limine* by asserting the following arguments: (1) Rule 412 was inapplicable because the evidence at issue involved workplace speech or conduct and was not offered to prove "sexual predisposition" or prior "sexual behavior"; (2) the evidence was admissible to show that the conduct complained of by the plaintiff was not "unwelcome"; and (3) the evidence was admissible on the issue of damages.[3]

---

**3.** Rule 412 makes no exception for evidence otherwise covered by the Rule but offered as to the issue of damages. The Court is not inclined to create such an exception. The Rule itself would permit the proponent of such evidence to move for its admissibility under Rule 412(b)(2) and (c)

if a Court were to find that the probative value substantially outweighed the danger of harm to the victim and of unfair prejudice to any party. *See also Truong v. Smith,* 183 F.R.D. 273 (D.Colo.1998).

Neither party submitted in advance of trial any detailed description of the evidence in dispute. The defendant represented that the evidence it intended to offer was not designed to prove "sexual predisposition," but only that the plaintiff initiated and engaged in workplace conversations of a sexual nature.

Without a hearing, on July 14, 1998, the Court granted in part the motion of the plaintiff. The Court agreed the testimony proposed by the defendant could lead the jury to draw an impermissible inference upon learning that the plaintiff had a sexual relationship with a former supervisor. The Court prohibited the defendant from eliciting any testimony describing the plaintiff's sexual relationship with a former supervisor. The Court also ordered that the testimony elicited must involve the issue of "welcomeness." The defendant was permitted, however, to offer evidence as to workplace conversations which plaintiff initiated or contributed to regarding sexual matters. The Court expressly held that Federal Rule of Evidence 412 did not govern the admissibility of the evidence in question.

The Court is now convinced that its Order of July 14, 1998 was erroneous. In addition to the analysis set forth above describing the need for and scope of Federal Rule of Evidence 412, the conduct of the six-day trial thoroughly convinces this Court that an extensive, detailed review of the evidence should have occurred and limitations should have been imposed to insure that the jury did not consider evidence otherwise prohibited or limited by Rule 412. While neither party violated the Order of July 14, 1998, the Court is convinced, having heard the disputed testimony in much greater detail and with more sharply defined contour, that a great deal of highly prejudicial, personally invasive, and legally irrelevant evidence was heard by the jury in this case.

 The first of such evidence involved statements allegedly made by the plaintiff as to a sexual relationship with a Richard Head, a former supervisor at a prior place of employment. The defendant asserted throughout this litigation that it was not attempting to use evidence of the relationship to demean the character or reputation of the plaintiff, nor to show either sexual predisposition or prior sexual behavior. Yet, the defendant certainly knew that by offering to show plaintiff's reference to the prior affair in workplace conversations that the jury would learn of the extramarital relationship.

The defendant elicited testimony concerning the Richard Head affair from a great number of witnesses, including the plaintiff, Michael Wesney, Deborah Cole, Kris Smith, Melanee Mareno and Judy Horn. Yet, the record developed at trial contains no evidence that Charles Bentz, the one Hirschvogel supervisor whom the plaintiff claimed was the sole creator of the hostile work environment, ever heard the plaintiff state that she had any type of sexual relationship with Richard Head.

Counsel for defendant extensively cross-examined the plaintiff as to all of the co-workers with whom she discussed the affair. (E.g., Vol. II at 147–151) Counsel never inquired as to whether plaintiff ever discussed the affair with Bentz. Bentz himself testified at length as to other conversations relating to sex which he had with the plaintiff. At no point, however, did Bentz ever describe a conversation with the plaintiff in which she described to him a sexual relationship with Head. Finally, the Court notes that the defendant elicited from the plaintiff a rather long and otherwise irrelevant story concerning Richard Head. The story made no reference to any sexual relationship between Head and plaintiff. The story did, however, clearly inform the jury that Head was married at the time of the affair, as further described by numerous witnesses later called by the defendant. (Vol. II at 149)

In the pretrial motion *in limine* filed by the plaintiff concerning the affair with Head, and in the defendant's memorandum in opposition, the issue as to whether Bentz was ever part of workplace conversations concerning Head was never raised. Conversations held between the plaintiff and female co-workers,[4] to which Bentz was not a party

4. Michael Wesney testified that he heard plaintiff refer to Richard Head. Wesney testified, howev-

and which described a sexual liaison, are clearly governed by Rule 412. Had the Court been aware before trial that this highly prejudicial evidence offered by the defendant involved only statements made by plaintiff to co-workers whom she never accused of sexual harassment, the evidence would have been stricken even under the more relaxed Rule 403 standard, and clearly should have been stricken under Rule 412.

A similar matter arose in the discovery dispute described in *Howard v. Historic Tours of America*, 177 F.R.D. at 53. While *Howard* involved sexual harassment including an additional element, sexual propositioning, the court's reasoning is instructive. It noted:

> If the affair was secret, it could not have affected anyone else's perception and consequential behavior. Yet, the question defendants propound is not limited to sexual behavior which plaintiffs had reason to believe would be known by the harassing employees. Without such a restriction, it is impossible for the information sought to be relevant ..., as to the harassing employees' knowledge and the consequential reasonableness of their conclusion that the plaintiffs would welcome their sexual advances.

*Id.* at 51–52.

While in the instant case, plaintiff's affair may not have been secret, there is utterly no evidence that the one allegedly harassing supervisor, Charles Bentz, overheard plaintiff speak of the affair. The Court concludes that admitting the testimony relating to or describing the affair was in error. All of the evidence relating to the affair and the plaintiff's discussions at work concerning the matter was inadmissible under Federal Rule of Evidence 412.

A great deal of other evidence subject to Rule 412 was also offered by the defendant without compliance as to both the procedural and substantive requirements of support under subsection (c)(2). The defendant asserts in its Memoranda Contra to Plaintiff's Motion for a New Trial at page 6 that plaintiff, by failing to depose all of defendant's wit-

nesses, looks to Rule 412 as a remedy for her failure to conduct discovery. This argument is wholly unavailing. The Court first notes that discovery is a right, not an obligation of the plaintiff. Further, the testimony adduced at trial indicated that the plaintiff is now unemployed and may not have had the means to depose all of the potential witnesses identified by the defendant corporation. Finally, the fact a party fails to depose every witness does not dispense with the necessity of adhering to the Rules of Evidence.

More importantly, Federal Rule of Evidence 412 does not permit a defendant to first offer evidence of "sexual predisposition" or prior "sexual behavior" at trial. Subpart (c)(2) requires that such evidence be the subject of a sealed motion filed fourteen (14) days in advance of trial. The Rule places no obligation on the plaintiff to file a motion *in limine* concerning such evidence which may or may not be offered by the defendant.

The following is a summary of other evidence offered by the defendant in violation of Federal Rule of Evidence 412.

*1. Conversations concerning oral sex.*

■ The defendant called one of its employees, Deborah Cole, to testify on direct examination. The following exchange occurred:

Q. Did Ms. Brunot, in these conversations that you had at work during normal work hours, ever discuss a particular sex act with you?

A. Yes, she did.

Q. Can you tell me about that, please?

A. She asked me what I thought about oral sex.

Q. Is it something she came to your office to discuss with you?

A. I—it came as a surprise to me, but she asked me, just walked in my office and asked me what I thought about it.

Q. The door open?

A. Yes.

Q. Normal hallway traffic?

A. Yes.

er, that plaintiff did not relate to him that she had engaged in sexual relations with Head.

Q. What did you say when she asked you this?

A. I think I was a bit embarrassed, so I tried to dodge the questions, but basically, she had asked me whether I liked it, and I said what do you mean? Did I do it? Things of that nature.

Q. Did she use a particular phrase in describing oral sex in that conversation?

A. Well, she asked me about giving a blow job.

(Vol. V at 153)

No testimony was elicited to indicate that Charles Bentz was part of this conversation between Cole and plaintiff. No evidence was offered that he ever knew of the conversation. While no objection was made at trial by plaintiff's counsel, such evidence was covered by Rule 412 and should have been considered and excluded prior to trial. The probative value of such testimony is nil, in the absence of the discussion occurring in the presence of Bentz. The prejudicial effect is clear. The evidence paints the plaintiff as a person who is both sexually aggressive and verbally descriptive as to matters many, if not most, jurors would find highly personal and offensive. Neither of these characteristics, in the absence of linking such conversations to Bentz, bears on any of the issues in the case.

### 2. *Allegations of Flirting.*

■ Defendant adduced the testimony of a Michael Wesney, an employee of the company. On direct examination, he was asked:

Q. Did you witness Ms. Brunot flirting with Mr. Bentz?

A. Can you repeat that, please?

Q. Did you witness Ms. Brunot flirting with Mr. Bentz?

A. Yes.

Q. Describe the flirting conduct.

A. The flirting conduct had again to do again with the punching that was observed,

the being there right beside the chair, the swooning—

Q. When you say swooning, tell us what you mean?

A. Body language, which it was again observed.

Q. Whose body language?

A. Body language by Dujuana.

(Vol. IV at 155)

Evidence that a plaintiff in a sexual harassment case may have flirted with the alleged harasser is clearly within the type of conduct described as "sexual behavior" or "sexual predisposition" described in Rule 412. Such evidence should have been considered, weighed, and ruled upon prior to trial.

Given the fact that Bentz never described the plaintiff as flirtatious, the Court is convinced that such evidence could not meet the standard set forth in Rule 412(b)(2) in that the probative value is weak and the potential harm or prejudice to the alleged victim is strong. Such testimony could improperly paint the plaintiff as having invited sexual harassment, when even the alleged harasser, the supposed target of the flirtatiousness, failed to support the testimony.

### 3. *Use of profanity by the plaintiff.*

■ The defendant introduced without objection testimony from virtually every witness it presented that the plaintiff frequently used profanity in the workplace, including a four letter word beginning with the letter "f" and a five letter word beginning with the letter "b." [5]

As noted above, Federal Rule of Evidence 412 encompasses an alleged victim's speech when such speech is used to rebut a claim that conduct constituting sexual harassment was "unwelcome." As further support for this proposition, the Court notes, for instance, that the use of profanity by a plaintiff would be thoroughly irrelevant in a personal

---

5. Testimony was also elicited from several witnesses that the plaintiff referred to Marjorie Hunt with an offensive word which was meant to describe a part of the female anatomy and rhymed with Hunt's last name. While the plaintiff denied such statements, Charles Bentz testified that the plaintiff used such reference during a conversation involving the two of them. Because such alleged statement was, according to Bentz, made to him by plaintiff, and the statement used a word having reference only to the female reproductive anatomy, these statements are excluded from the analysis of the other profanity allegedly used by the plaintiff.

injury automobile case. Likewise, the evidence presented here that the plaintiff used profanity was clearly offered by the defendant to make at least an inference that the plaintiff could not have found the claimed sexually derogatory and explicit statements of Charles Bentz to be unwelcome.[6]

The context and meaning of such profane statements should have been thoroughly explored in a pretrial setting. For example, there is no question that the precise profanities at issue here are readily found with increasing frequency in normal discourse, publications and broadcasts. It is not at all clear that these words have a sexual connotation. If a plaintiff used the words "damn" or "hell" in regular conversation, such profanities connote no sexual overtones and would not be relevant to any issue in this case. By analogy, if the "f" word was used by plaintiff in the same context as one could imagine the words "damn" or "hell" being used in ordinary conversations, such usage may not be relevant but still could be quite prejudicial, particularly when heard and considered by a juror who might be offended by such language.

Moreover, a generalized use of the "f" word, while offensive to many, may not have any linguistic or practical association with sex-based speech. If so, the use of the "f" word may have nothing in common with the sexually explicit and demeaning statements allegedly made by Bentz to the plaintiff.

Federal Rule of Evidence 412 begins with the presumption that evidence therein described is inadmissible unless the Court first determines that the probative value outweighs the harm or unfair prejudice to the plaintiff. At trial, the jury certainly heard evidence about the plaintiff's use of profanity in a way that caused harm and prejudice to the case. Such evidence paints the plaintiff as foul-mouthed, abrasive, and outspoken, none of which casts her in a favorable light.

What is far less clear is the probative value of such testimony. Plaintiff's claims as to Bentz's conduct were not based upon his use of profanity. Instead, her accusations involved his use of sexually explicit and degrading comments directed at her. Under the balancing test set forth in Rule 412(b)(2), an insufficient showing was made to render such evidence admissible.

Having heard extensive testimony in the trial of this case, the Court is convinced that the evidence described above should not have been admitted, even in the absence of objection by the plaintiff.[7] The plaintiff's claims of sexual harassment allegedly perpetrated by Charles Bentz involved specific, explicit sexual speech. The defense was well within legal bounds to offer contextual explanations of such conversations and to show that the plaintiff herself may have initiated explicit sexual speech in her conversations with Bentz.

The defense, however, included much more, including (a) highly personal sexual conversations to which Bentz was not a party; (b) allegations of flirting between Bentz and plaintiff, which not even Bentz claimed occurred; and (c) generalized, undifferentiated testimony that plaintiff used profanity in the workplace. All of this evidence was testified to in great length and detail by a series of witnesses.

In addition, the jury was presented with other evidence not objected to by the plaintiff and not within the scope of Rule 412 which should not have been admitted. The defendant elicited testimony from a series of witnesses that the plaintiff described her baby as the "baby from hell." (*E.g.*, Bentz testimony, Vol. V at 88) Plaintiff denied making such statements. Also presented from several witnesses was testimony that the plaintiff stated she regretted having a husband who was a "blue collar" employee. (Bentz testi-

---

6. In fact, defendant's opening statement to the jury made manifestly clear that this tactic would be its primary defense. Nearly every witness called by defendant was used to develop this precise inference.

7. Because Rule 412 imposes an affirmative obligation on the defendant to move, *in camera,* to

admit the evidence covered by the Rule, any failure of plaintiff to object does not mean that the error is waived or that defendant had no obligation to comply. Further, plaintiff made a general and continuous objection to matters within the purview of Rule 412. (Vol. IV at 2–3)

mony, Vol. V at 78; Cole testimony, Vol. V at 154)

While this evidence should have been objected to and stricken from the record, the Court is not confident that the statements, standing alone, prevented a fair trial. The Court is, however, convinced that the negative inferences accompanying such statements—that the plaintiff disliked her own child and husband—dovetailed with similar negative inferences created by the violation of Federal Rule of Evidence 412. The defense thus presented the picture of a sexually aggressive, foul-mouthed, bad mother and wife, none of which was relevant unless tied to the context of the specific claims made by her against Charles Bentz.

### V.

 With the benefit of hindsight, this Court concludes that a plethora of evidence was improperly presented to the jury in this case. Such evidence was presented in violation of Federal Rule of Evidence 412. Moreover, much of the evidence should not have been admitted even under the more liberal standard set forth in Federal Rule of Evidence 403. The quantum of such inadmissible evidence combined with the highly prejudicial content of the testimony convinces this Court that the plaintiff was denied a fair trial. This Court cannot say, as required by *Kotteakos v. United States*, 328 U.S. 750, 756, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), that the judgment in this case was not "substantially swayed by the error."

The Court notes that the plaintiff seeks a new trial based on only one of two grounds available under Federal Rule of Civil Procedure 59. No claim is made that the verdict was against the manifest weight of the evidence. The trial in this case included admissible evidence upon which a reasonable jury could have found for either the defendant or the plaintiff. The same trial also included a large amount of prejudicial evidence which the jury should not have heard and which denied the plaintiff the right to a fair trial, entitling her to relief under Federal Rule of Civil Procedure 59 and *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041 (6th Cir.1996).

The Motion of the plaintiff for a new trial (Doc. 73) is therefore **GRANTED**. This case shall be reset for trial and a scheduling order shall issue.

**IT IS SO ORDERED.**