Cindy **RATTS**, et al., Plaintiffs,

v.

**BOARD OF COUNTY COMMISSIONERS**, Harvey County Kansas, et al., Defendants.

No. 97–4240–DES.

United States District Court,
D. Kansas,
Topeka Division.

Sept. 28, 1999.

---

Cheryl D. Myers, Michael B. Myers, Myers & Myers, Topeka, KS, for Cindy Ratts, J.D. Ratts, RTR Corporation, plaintiffs.

Alan L. Rupe, Husch & Eppenberger, Wichita, KS, for defendants.

James S. Pigg, Fisher, Patterson, Sayler & Smith, Topeka, KS, Alan L. Rupe, Husch & Eppenberger, Wichita, KS, for Robert Eugene Maier.

Monte A. Vines, Adams & Jones, Chartered, Wichita, KS, Alan L. Rupe, Husch & Eppenberger, Wichita, KS, for Robert Myers.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

Now before the court is plaintiffs Cindy and J.D. Ratts' Motion for Protective Order. (Doc. 127.) Defendants have filed responses.

Plaintiff Cindy Ratts claims that she was subjected to a sexually hostile work environment and unlawful retaliation and discriminated against because of her gender and alleged disability. Ms. Ratts claims defendants' actions have caused her to suffer emotional distress and the loss and impairment of her ability to perform services as a wife to her husband, J.D. Ratts. Plaintiff J.D. Ratts asserts that defendants' actions have caused him to suffer emotional distress and the loss and impairment of his ability to perform services as a husband to his wife. Plaintiffs also claim that defendants invaded their privacy, placed them in false light, breached an alleged contract, tortuously interfered with prospective relations and conspired to interfere with their livelihood. Defendants deny the claims of plaintiffs, specifically arguing that Ms. Ratts welcomed the conduct which she has complained of and engaged in a consensual sexual relationship with one of the defendants during her employment with defendant City of Newton.

Plaintiffs have filed the instant motion requesting a protective order regarding certain inquiry concerning the consensual sexual activity and/or consensual sexual discussions with any of defendants and/or employees of defendants before the time frame of early summer 1987, which is the time frame after which plaintiff complains that she was subjected to unwelcomed sexual advances and sexual conduct and hostile work environment. Defendants claim the line of inquiry in issue is critically probative of defendants' theory that the conduct complained of by Ms. Ratts was welcomed and, therefore, did not constitute sexual harassment or subject Ms. Ratts to a sexually hostile work environment.

Fed.R.Civ.P. 26(c) provides:

Upon motion by a party or by the person from whom discovery is sought, ... and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that the disclosure or discovery not be had.

Defendant Robert Maier claims that plaintiffs objected and refused to answer a number of questions raising the attorney-client or marital communication privilege. These questions were neither listed in Exhibit A, attached to plaintiffs' motion, nor mentioned in plaintiffs' Motion for Protective Order or supporting brief. Plaintiffs have not filed a reply addressing defendant's claim. Therefore, the court concludes that plaintiffs are not requesting a protective order as to these questions. The court's rulings herein will relate solely to the questions listed in Exhibit A, attached to plaintiffs' Motion for Protective Order.

Plaintiffs' object to the inquiry in issue on the grounds the information sought is irrelevant. The scope of discovery permitted under Fed.R.Civ.P. 26(b)(1) is as follows:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, ... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy, for purposes of discovery, has been defined by the United States Supreme Court as encompassing "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Discovery requests should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action. *Smith v. MCI Telecommunications Corp.,* 137 F.R.D. 25, 27 (D.Kan. 1991).

A party does not have to present a prima facie case to justify a request which appears reasonably calculated to lead to the discovery of admissible evidence. When the discovery appears relevant 'the burden is on the party objecting to show that the discovery is not relevant.' *Id.* [*Smith v. MCI Telecommunications Corp.,* 137 F.R.D. 25, 27 (D.Kan.1991)] When 'relevancy is not apparent, [however,] it is the burden of the party seeking discovery to show the relevancy of the discovery request.' *Universal Money Ctrs., Inc. v. American Tel. & Tel. Co.,* No. 90–2201–O, unpublished op. at 3 (D.Kan. July 15, 1991).

*Evello Investments N.V., et al. v. Printed Media Services, Inc.,* 1995 WL 135613 (D.Kan.1995).

Determining discoverability in a sexual harassment suit requires the court to consider the evidence in the context of Rule 412 of the Federal Rules of Evidence. *Stalnaker v. Kmart Corp.,* No. Civ. A. 95–2444–GTV, 1996 WL 397563, at *3 (D.Kan. July 11, 1996) (citing *Burger v. Litton Indus.,* 91 Civ. 0918[WK][AJP], 1995 WL 476712 [S.D.N.Y. Aug. 10, 1995] ). The 1994 Advisory Committee Notes to Rule 412 state:

In order not to undermine the rationale of Rule 412, however, courts should enter appropriate orders pursuant to Fed. R.Civ.P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality. Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery. (pp. 367–68.)

■ Fed.R.Evid. 412 governs the admissibility of evidence of an alleged victim's sexual history in sex offense cases. In 1994, Rule 412 was extended to both criminal and civil proceedings alleging sexual misconduct, including sexual harassment suits. Fed. R.Evid. 412 advisory committee's notes. Rule 412 does not allow admissibility of evidence intended to prove an alleged victim's other sexual behavior or an alleged victim's sexual predisposition. Sexual behavior includes any physical conduct (sexual intercourse or sexual contact) and mental activities (dreams and fantasies). Fed.R.Evid. 412 advisory committee's notes. Sexual predisposition includes evidence that may express a sexual connotation (dress, speech, or lifestyle). *Id.*

■ Evidence of the alleged victim's sexual behavior and sexual predisposition, however, can be admitted if it satisfies the balancing test established in Rule 412(b)(2). The evidence 1) must be "otherwise admissible under [the Federal Rules of Evidence]" and 2) "its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." Fed. R.Evid. 412.

The court, in *Gallardo v. Board of County Commissioners, Kearny County, Kansas,* unpublished No. 93–4183–RDR (D.Kan. Sept. 1994) (Newman, M.J.), used a similar test to determine discoverability in the context of a sexual harassment suit. The test involved a balancing of the relevancy of inquiry against the degree of invasion of privacy. The greater the probative value of the proposed discovery, the more extensive an invasion of privacy will be allowed. Conversely, the more remote the possibility of obtaining admissible evidence, the more limited the intrusion. *Id.* The Rule 412 test establishes a higher standard that must be met for admissibility, requiring the "probative value [of the evidence] *substantially outweighs* the danger of harm to any victim *and of unfair prejudice to any party.*" (Emphasis added). Furthermore, the party proposing to admit the evidence must bear the burden of proving that the evidence satisfies the balancing test. Fed.R.Evid. 412 advisory committee's notes.

Defendants suggest that the evidence they seek to obtain is intended to establish that the sexual advances and sexual conduct were not "unwelcomed" by Ms. Ratts, rather than to establish certain sexual behavior or the sexual predisposition of plaintiff limited by Rule 412. In *Socks–Brunot v. Hirschvogel Incorporated,* 184 F.R.D. 113, 119 (S.D.Ohio 1999), the court stated that "while relevant evidence is generally admissible under Fed. R.Evid. 403, evidence subject to Rule 412 is presumptively inadmissible, even when offered to disprove 'unwelcomeness' in a sexual harassment case." Although Fed.R.Evid. 105 usually allows the jury to hear evidence admissible for one purpose but inadmissible for another, this general rule does not apply to evidence covered by Rule 412. *Id.* The evidence must undergo pre-trial resolution of admissibility issues and the balancing test under Rule 412. *Id.*

District courts have considered how Rule 412 applies to the discovery of particular types of evidence in sexual harassment suits. Some types of evidence are admissible and, therefore, discoverable, such as "[e]vidence of an alleged victim's reputation . . . if it has been placed in controversy by the alleged victim." Fed.R.Evid. 412(b)(2). Evidence of the victim's sexual conduct "on-duty, at the workplace, and with named defendant[s]" may also be discoverable. *Barta v. City and County of Honolulu,* 169 F.R.D. 132, 135 (D.Haw.1996).

On the other hand, courts have found certain types of evidence inadmissible under Rule 412. The reputation of an alleged victim is not admissible if he or she does not

place it in controversy. Fed.R.Evid. 412. Usually, non-workplace conduct is irrelevant and, therefore, inadmissible. Fed.R.Evid. 412(c) advisory committee's notes. In *Barta,* the court held that evidence of the victim's sexual conduct "off-duty, outside the workplace, and conduct not with named defendant[s]" was not discoverable. 169 F.R.D. at 136.

Rule 412 also limits evidence of the plaintiff's prior sexual partners. *Howard v. Historic Tours of Am.,* 177 F.R.D. 48 (D.D.C.1997)(holding that plaintiff did not have to answer questions about sexual relationships with co-workers not named as harassers). The court found that this evidence was thoroughly irrelevant. *Id.* In addition, the court found that such evidence did not establish that the alleged victim welcomed the conduct. *Id.*

The deposition inquiry in issue must be subjected to the balancing test of Rule 412. In applying such test, consideration must be given to plaintiffs' claims which contain detailed descriptions of defendants' conduct, including unwelcomed intentional and frequent sexual actions and speech, sexual assault and battery, verbal and physical threats and harassing, hostile, abusive, humiliating and retaliatory actions.

The court initially rejects plaintiffs' argument that defendants should be limited in their inquiry into activities and/or discussions before early summer 1987. Due to the allegations of the parties in this case, the court finds some inquiry into matters prior to the early summer of 1987 may reasonably lead to the discovery of admissible evidence. Therefore, the relevant time period will be one of the factors considered by the court as it applies the balancing test of Rule 412.

■ The court has reviewed each question and has applied the balancing test of Rule 412. The court finds the following questions are reasonably calculated to lead to the discovery of admissible evidence and the probative value of the proposed discovery substantially outweighs the invasion of plaintiffs' privacy and/or danger of harm to plaintiffs:

**Questions to Cindy Ratts by Alan Rupe**

| | |
|---|---|
| pp. 27:22–25; 28:1 | Since that time [mid March 1995] have you ever had a conversation which was consensual concerning sex or sex was a topic with Bob Maier since March, 1985? |
| pp. 28:25; 29:1 | Since August of 1979 have you ever had a consensual sexual relationship with Bob Maier? |
| p. 29:5–6 | Same question since March, 1985? |
| p. 80:7–8 | Had you had sex with him [Maier] before March of 1987? |
| p. 80:22–24 | And between March of 1985 when he became your supervisor and March of 1987, did you have sexual intercourse with Bob Maier? |

After plaintiff Cindy Ratts testified about two non-consensual sexual contacts by Maier at the workplace in 1987, she was asked the following question (p. 79:13–25):

| | |
|---|---|
| p. 97:21–25 | ... other than these two occasions, were there any other occasions that you had sexual intercourse with Bob Maier, and that includes before and after these two occasions? |
| p. 157:12–18 | And was your complaint to Ted Brunner what you just told me, that Bob Maier had said he wanted to rape you? A. Yes. And in that conversation with Brunner did you tell Brunner that you had previously had sexual intercourse with Bob Maier? |

The following questions relate to the intake summary which Prairie View Psychiatric Center made regarding Ms. Ratts' first appointment for treatment in December 1995 and January 1996.

| | |
|---|---|
| pp. 353:21–25; 354:1–2 | On Page 00015, the second paragraph from the bottom that says she has had two other affairs besides the one with her current boss, one of these was very brief and involved the male she was doing business with on the storage sheds. Is that—is any part of that statement untrue? |
| p. 354:6–7 | Is it true that you had an affair with your current boss? |
| p. 354:10–13 | Is it true that you did not tell your husband about the affairs as set forth in the |

last paragraph on Page 00015 in Exhibit 8?

p. 355:14–21 I asked you is it true as set forth in 00016 that she also had issues with her husband that she has not dealt with, and you said that is not true. He is aware of everything. So my question is is that true, which is—or let me phrase it this way. Was that true on January 22nd, 1996, as set forth in the last paragraph of Page 00016?

**Questions to Cindy Ratts by Steve Pigg**

p. 422:18–20 Did you ever have a sexual relationship with him [Ted Brunner] during that time frame (1994, 1995) at all?

p. 423:17–18 When was the last time that you had consensual sex with Bob Maier?

p. 423:22–23 Have you ever had consensual sex with Bob Maier?

p. 429:22–24 Did you ever advise Bob Maier that you enjoyed reading sexually explicit materials?

p. 430:7–9 Did you ever voluntarily participate in sexual discussions with Bob Maier?

pp. 432:24–25; 433:1 Did you tell Bob Maier that you had engaged in a sexual relationship with J.D. Ratts while on the airport property?

p. 433:4–5 Did you tell Bob Maier about affairs and sexual relationships of Edye Leslie?

p. 433:8–9 Did you tell Bob Maier about an alleged affair of Terry Williams?

p. 434:5–6 Did you ever have a sexual relationship with Bob Maier at that location [his house]?

p. 434:23–24 Did you initiate the first sexual activity with Bob Maier?

p. 435:2–3 Did Bob Maier at one time break off the affair with you?

p. 435:6–8 Did you reignite the affair after Bob Maier had broken off the affair with you?

p. 437:16–18 But that was not the first time that you had engaged in such activity with him, was it?

The following questions were asked after the plaintiff stated she told her husband that Maier had forced her to engage in oral sex: (see pages 436–438).

p. 439:7–8 Have you told him (her husband J.D. Ratts) about all of your sexual encounters with Bob Maier?

p. 440:17–19 Did you tell your husband about relationships with any other men besides Bob Maier?

p. 440:22–25 Did your husband—to your knowledge did your husband suspicion that you were having relationships with any other men?

p. 441:15–16 Did you have sex with Bob Maier in the airport lounge, pilot's lounge?

p. 441:21–22 Did you have sex with Bob Maier on the runway at the airport?

pp. 441:25; 442:1 Did you have sex with Bob Maier at B shack?

p. 442:10–11 Did you have sex with Bob Maier at the drainage ditch in the pickup?

p. 442:14–15 Did you have sex with Bob Maier in the T hangar at the airport?

p. 442:18–20 Did you have sex with Bob Maier on occasions when he would object and say, no, we might get caught. You'd persist?

p. 443:20–21 Did you ever give Bob Maier a sexually explicit video?

pp. 443:24–25; 444:1 Did you watch the sexually explicit video you gave Bob Maier with him?

p. 444:8–11 Did Bob ever tell you that even if you took all your clothes off and stood in front of him, he wouldn't touch you, or words to that effect? I know it's probably not a quote.

p. 446:22–24 Did you report to Phil Kloster that you had had a consensual sexual relationship with Bob Maier?

p. 447:2–4 Did you report to the attorney, Robert Myers, that you'd had a consensual sexual relationship with Bob Maier?

p. 447:18–19 Did you talk to Bob Maier about your friends and their sexual experiences?

p. 452:24–25 Did you ever tell Bob Maier that you love him?

p. 453:3–4 Did he ever tell you that he loved you?

The following questions were asked after plaintiff testified about non-consensual sexual contacts forced on her by Maier:

pp. 454:25; 455:1–2 Weren't those sexual encounters a continuation of the sexual relationship that you had enjoyed with him for some time?

p. 456:16–18   Is it your testimony you did not terminate the consensual affair with Bob Maier?

p. 456:21–22   How did you terminate the sexual relationship with Bob Maier, if you did so?

p. 457:4–5   Is it true that you took photographs of yourself and Mr. Maier in a sexual act?

p. 460:1–2   Did someone tell you that this was a rape (by Bob Maier)?

p. 462:10–14   You testified that in March, 1995, he showed you a condom that he had found in a drawer. Was that a condom that was left over from your sexual relationship with him and he showed it to you in that context?

p. 464:11–14   Did you tell him, [Fire Chief Jackson] that because you were concerned that you would lose your job if the City became aware that you had engaged in a sexual relationship while on the clock at work?

**Questions to Cindy Ratts by Stephanie Scheck**

p. 676:20–22   And does this also correspond with the time frame that your husband learned about the consensual affair with Mr. Maier?

**Questions to J.D. Ratts by Monte Vines**

p. 558:7–9   Is it your claim he should have told you that he and your wife were having an affair? Is that what you wanted him to tell you?

**Questions to J.D. Ratts by Stephanie Scheck**

p. 31:2–6   So can I assume that the first time she mentioned anything of a sexual nature was in 1995 that she would not have told you about any affair she would have had with Bob Maier prior to this time?

Plaintiffs' motion for protective order is overruled as to the above questions.

The court finds the following questions seek information not reasonably calculated to lead to the discovery of admissible evidence:

**Questions to Cindy Ratts by Alan Rupe**

p. 18:7–9   Would you tell me the names of the people in your lifetime that you have had a consensual sexual relationship with?

p. 20:5–8 (also at p. 23:6–9)   Have you ever had a consensual sexual relationship with any individual employed by Harvey County, the City of Newton or any of the defendants in this case?

p. 22:17–21   Have you ever had a consensual sexual relationship with any individual employed by Harvey County, the City of Newton or any of these defendants since you began employment at the airport?

p. 24:11–13   Have you ever had a consensual sexual relationship with any individuals since January 1, 1993?

p. 24:16–20   Have you ever had a consensual discussion in which sex was a topic with any individual employed by Harvey County, the City of Newton or any of the defendants in this case?

pp. 24:25; 25:1–5   Have you ever had a conversation in which sex was a topic that was consensual or welcome with any individual employed by Harvey County, the City of Newton or any of the defendants in this case since August, 1979?

p. 25:16–20   Have you ever had a conversation in which sex was a topic that was consensual or welcome with any individual employed by Harvey County, the City of Newton or any of the defendants in this case since January, 1993?

p. 26:16–19   Have you ever had a conversation that was welcome concerning sex or in which sex was the subject matter with any individual employed by the City of Newton?

p. 26:22–23   Same question since August, 1979?

p. 26:5–8, 12–13   Have you ever had a consensual, welcome discussion concerning sex with any individual employed by Harvey County in the workplace … beginning in August of 1979?

p. 27:4–8   Have you ever had a conversation that was welcome concerning sex or in which sex was the subject matter with any individual employed by the City of Newton since January, 1993?

| | |
|---|---|
| p. 27:12–16 | Have you ever had a conversation which was consensual, in your mind welcome, concerning sex or conversation in which sex was a topic with Bob Maier since August, 1979? |
| p. 30:19–22 | Since August, 1979, have you ever had any consensual physical contact with any individual employed by Harvey County, the City of Newton or any of the defendants in this case? |
| p. 31:10–13 | Have you ever had a consensual—have you ever had any consensual physical contact with any individual employed by Harvey County since August, 1979? |
| p. 31:16–17 | Same question with regard to City of Newton since August, 1979? |
| p. 33:2–4 | Have you ever had any sexual physical contact with anyone at the workplace since August, 1979? |
| p. 33:9–13 | Have you ever had any sexual physical contact with anyone at any location owned, operated or controlled by the City of Newton or Harvey County since August, 1979? |

The court finds the following question is over broad:

**Question to J.D. Ratts by Steve Pigg**

| | |
|---|---|
| p. 307:8–9 | Are there any occasions in which you found that your wife was not truthful with you? |

The court finds a similar question was asked and answered by plaintiff (p. 101:9–12):

**Questions to Cindy Ratts by Steve Pigg**

| | |
|---|---|
| p. 429:9–11 | Had you ever swallowed ejaculate of Bob Maier prior to the incident that you described earlier in the deposition? |

Plaintiffs' motion for protective order as to these questions is granted.

While, in most instances, the court would find the following questions inappropriate and/or outside the scope of permissible discovery, due to the specificity of plaintiffs' claims and the fact that in some instances plaintiff Cindy Ratts has answered questions which would give rise to a follow-up question, the court finds the probative value of the proposed discovery substantially outweighs the invasions of plaintiffs' privacy and/or danger of harm to plaintiffs.

**Questions to Cindy Ratts by Steve Pigg**

| | |
|---|---|
| p. 428:22–25 | On how many occasions did you have a sexual incident which includes in my definition either sexual intercourse or oral sex with Bob Maier? |
| p. 429:3–6 | Had you ever performed oral sex on Bob Maier prior to the incident that you described earlier in your deposition? |
| p. 429:14–19 | Had you advised Bob Maier words to the effect, and this might not be exact, but words to the effect that you enjoyed oral sex, you thought it was healthy, that you thought it was good for you, that you didn't understand why some women didn't like that? |
| p. 430:2–4 | Did you ever advise Bob Maier regarding the particulars of how you engaged in masturbation? |

**Questions to Cindy Ratts by Stephanie Scheck**

| | |
|---|---|
| p. 701:13–14 | Have you confided in Mr. Ratts regarding any extramarital affairs? |

**Questions to J.D. Ratts by Stephanie Scheck**

| | |
|---|---|
| pp. 55:24–25 56:1 | Does the fact that your wife has had an extramarital relationship or affair affect your sex life? |
| p. 116:6–9 | At any point did Cindy ever talk to you about how she tried to end the affair with Bob Maier? |
| p. 116:17–19 | Did your wife ever tell you how long the relationship, the sexual consensual relationship with Bob Maier lasted? |
| p. 268:11–16 | Would it have improved the relationship of your wife and yourself and, therefore, the operation of your business by your scenario if Mr. Bob Maier had told you at the time you confronted him in 1992 or so that there was an affair between Cindy Ratts and himself? |
| p. 275:10–11 | Has Cindy Ratts told you that she has had any extramarital affairs? |
| p. 275:15–16 | Has Cindy Ratts at any time told you that she had an affair with Bob Maier? |

**Questions to J.D. Ratts by Steve Pigg**

| | |
|---|---|
| p. 277:16 | With you sexually is she the aggressor? |

p. 295:7–10    In your relationship with your wife have you had occasion in which you've had sex with her in which she initially said no or didn't want to?

Plaintiffs' motion for protective order as to these questions is overruled.

In summary, plaintiffs' Motion for Protective Order (doc. 127) is granted in part, overruled in part. Plaintiffs shall appear for completion of their depositions at a time and place convenient to the parties and answer the questions propounded by defendants' counsel consistent with the court's ruling herein. The court cautions counsel to refrain from asking questions which have previously been asked and answered.

Copies of this order shall be mailed to all counsel of record and unrepresented parties.

IT IS SO ORDERED.